977 So.2d 1158 (2007)
John SUDDITH, Appellant,
v.
UNIVERSITY OF SOUTHERN MISSISSIPPI, Dr. Aubrey K. Lucas, Individually and Officially, and Dr. G. David Huffman, Individually and Officially, Appellees.
No. 2005-CA-02130-COA.
Court of Appeals of Mississippi.
July 31, 2007.
Rehearing Denied December 11, 2007.
*1164 Kim T. Chaze, Hattiesburg, attorney for appellant.
John S. Hooks, James A. Keith, Jackson, Ian C. Jones, Lee P. Gore, attorneys for appellee.
Before LEE, P.J., BARNES and CARLTON, JJ.
BARNES, J, for the Court.
¶ 1. This case involves an employment dispute between The University of Southern Mississippi ("USM"), Dr. Aubrey Lucas, Dr. David Huffman, and one of USM's former professors, John Suddith, who filed suit alleging numerous state and federal violations. Suddith now appeals from the Circuit Court of Forrest County's grant of summary judgment in favor of the Defendants. We find the trial court was without reversible error and affirm.

SUMMARY OF FACTS AND PROCEDURAL HISTORY
¶ 2. In the fall of 1993, John Suddith was offered and accepted a temporary position for one year as a part-time gallery director and instructor with the university's Department of Art. In February of 1994, Suddith applied for and was selected for a "full-time tenure-track" position in the art department. The Chairman of the Department of Art, Jerry Walden, in a letter dated April 12, 1994, offered Suddith a "tenure-track appointment as Assistant Professor and Gallery Director . . . subject to final approval by the Board of Trustees of State Institutions of Higher Learning." The letter reiterated that "all contracts of employment at the University are subject to final approval by the Board of Trustees." Shortly thereafter, Suddith accepted the position by "letter. On May 17, 1994, USM's then-president, Dr. Lucas, in a letter to the faculty members of the art *1165 department, stated his approval of Dr. David Huffman's recommendation to hire Suddith despite the faculty's "disagreement about his appointment." In August of 1994, Suddith began work at USM in this position.
¶ 3. Before Dr. Lucas submitted Suddith's appointment to the Board of Trustees ("Board") for approval, an allegation surfaced from an anonymous Board member that Suddith, while married, had engaged in an affair with a student during his previous employment at Louisiana College. Dr. Lucas instructed Dr. Huffman, then-Vice President of Academic Affairs, to investigate the allegation, which was found to be true. When confronted by Chairman Walden, Suddith admitted to the affair. Dr. Lucas testified that he would not knowingly recommend employing a person who had had sex with a student, that he would want such information at the time of employment, and that he would move to remove a faculty member who engaged in that behavior. He further testified that for a faculty member to have sexual relations with a student is not proper conduct and damages the ability of the faculty member to be objective in grading the student. Dr. Lucas continued that, during the application process, Suddith had not been forthcoming with this information and had given other reasons for his departure from Louisiana College. Dr. Lucas therefore decided not to recommended Suddith to the Board for a tenure-track appointment but instead recommended him for a one-year only, non-tenure-track appointment. The Board approved of Dr. Lucas's one-year recommendation. Suddith received his appointment, commencing August of 1994 to May of 1995, according to excerpts of the Board's minutes of and agenda for August 18, 1994.
¶ 4. On October 24, 1994, Dr. Lucas wrote Suddith a letter explaining that the appointment approved by the Board was for one-year only and was not tenure-track. Attached to this letter was a contract memorializing the one-year appointment, which Suddith signed. Dr. Lucas's office received the contract on November 9, 1994, and Dr. Lucas executed the contract "for the Board."[1] According to the contract, Suddith's appointment ended on May 18, 1995. On May 17, 1995, Suddith wrote Dr. Lucas a letter stating his intent "to file a grievance procedure related to [his] position as Gallery Director" at USM. Suddith also wrote that it was his understanding that "the ten-day filing time from the last day of [his] contract (May 18th) will be up on the 28th of May." A few days later, following standard procedure, Suddith circulated his grievance form to various university departments. In the grievance Suddith complained that he was "terminated on May 18, 1995" for reasons that had nothing to do with his competency and that he was being discriminated against. He also complained that USM had not given any reason to terminate him and was "using the past to justify and break its contract." On May 25, 1995, Dr. Huffman wrote Suddith a letter explaining that his grievance was untimely. Dr. Huffman explained that since Suddith's employment contract was executed on November 9, 1994, he could not file a grievance in May 1995 because, according to the Faculty Handbook, "a grievance must be filed within two weeks of the incident." Dr. Huffman interpreted this time period to require filing within two weeks of November 9, 1994. Dr. Lucas *1166 testified that he met with Suddith in the summer of 1995, after Suddith's contract expired, and explained to Suddith that he would never knowingly hire a teacher who had engaged in an affair with a student.
¶ 5. Suddith filed a wrongful termination suit in the Circuit Court of Forrest County against USM and Drs. Aubrey Lucas and David Huffman, in their individual and official capacities. Suddith alleged numerous state and federal violations, including deprivation of various constitutional rights in violation of 42 U.S.C. § 1983, breach of employment contract, and commission of several state-law torts. He sought compensatory and punitive damages, attorney's fees and equitable relief including reinstatement, back pay, front pay and interest. Ultimately, the trial court granted defendants' motion for summary judgment and/or for qualified immunity on each of Suddith's claims. Suddith timely appealed.

STANDARD OF REVIEW
¶ 6. This Court utilizes a de novo standard to review the trial court's grant of summary judgment. Stallworth v. Sanford, 921 So.2d 340, 341(¶ 5) (Miss.2006) (citing Davis v. Hoss, 869 So.2d 397, 401(¶ 10) (Miss.2004)). This standard requires that the "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any," properly before the trial court, will be reexamined by this Court in order to determine if there is any genuine issue of material fact. M.R.C.P. 56(c). Summary judgment is appropriate if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Id. The evidence will be analyzed in the light most favorable to the party opposing the motion. Triplett v. Dempsey, 633 So.2d 1011, 1013 (Miss.1994).

DISCUSSION
¶ 7. Suddith raises seven issues on appeal; however, we will discuss the case in the following manner: first, we will address Suddith's general argument regarding the appropriateness of summary judgment. Then, we will discuss Suddith's federal-law and state-law claims.
¶ 8. Suddith argues that the trial court erred in making factual conclusions which were inappropriate in a summary judgment setting. He claims that there are numerous genuine issues of material fact in dispute which warrant presentation to a jury for resolution, such as whether Suddith was tenure-track, whether his contract was ratified by the Board, and whether he was entitled to certain benefits enumerated in the Faculty Handbook.
¶ 9. The law of summary judgment is well-established. Summary judgment will only be granted when there is no genuine issue of material fact to be decided at trial, thus judgment is granted as a matter of law. Mink v. Andrew Jackson Cas. Ins. Co., 537 So.2d 431, 432-33 (Miss. 1988). "A material fact is one which resolves any `of the issues, properly raised by the parties.'" Strantz ex rel. Minga v. Pinion, 652 So.2d 738, 741 (Miss.1995) (quoting Stegall v. WTWV, Inc., 609 So.2d 348, 351 (Miss.1992)). Summary judgment may not be a substitute for trying disputed factual issues. Mink, 537 So.2d at 433 (citing Brown v. Credit Center, Inc., 444 So.2d 358, 362 (Miss.1983)). To withstand summary judgment, the party opposing the motion must present sufficient proof to establish each element of each claim. Galloway v. Travelers Ins. Co., 515 So.2d 678, 684 (Miss.1987). Further, he must present more than a mere scintilla of colorable evidence to support his claims. Luvene v. *1167 Waldrup, 903 So.2d 745, 748(¶ 10) (Miss. 2005) (citing Wilbourn v. Stennett, Wilkinson & Ward, 687 So.2d 1205, 1214 (Miss. 1996)). Additionally, the party opposing summary judgment "may not rest upon the mere allegations or denials of his pleadings, but his response . . . must set forth specific facts showing that there is a genuine issue for trial." M.R.C.P. 56(e). The evidence must be sufficient that a fairminded jury could return a favorable verdict. Id. Importantly, "[m]ere allegation . . . of material fact is insufficient to generate a triable issue of fact" and avoid summary judgment. Palmer v. Biloxi Reg'l Med. Ctr., 564 So.2d 1346, 1356 (Miss.1990) (citing Smith v. Sanders, 485 So.2d 1051, 1054 (Miss.1986)). Specifically, "the plaintiff may not rely solely upon the unsworn allegations in the pleadings or `arguments and assertions in briefs or legal memoranda.'" Id. (quoting Magee v. Transcon. Gas Pipe Line Corp., 551 So.2d 182, 186 (Miss.1989)). "Where the non-moving party fails to establish `the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial,' no genuine issue of material fact can exist." Whiting v. Univ. of Southern Miss., 451 F.3d 339, 344 (5th Cir.2006) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). In summary, if a genuine issue of material fact is found, the trial court shall deny summary judgment; otherwise, the trial court shall grant the motion where the movant is entitled to judgment as a matter of law. M.R.C.P. 56(e); Miller v. Meeks, 762 So.2d 302, 304(¶ 3) (Miss.2000) (citing Brown, 444 So.2d at 362).
¶ 10. Suddith takes issue with the trial court's labeling a part of the order "Findings of Fact." Yet, at the summary judgment hearing, when the judge requested each party to "submit a proposed findings of fact and conclusions of law," Suddith did not object to that request. Suddith cites two cases which prohibit, in general, the trial court from making findings of fact: Mink v. Andrew Jackson Casualty Ins. Co., 537 So.2d 431, 432-33 (Miss.1988) and Triplett v. Dempsey, 633 So.2d 1011, 1013 (Miss.1994). Both cases admonish trial courts to refrain from trying issues of fact under summary judgment motions, but require them instead to determine if there are issues to be tried. Mink, 537 So.2d at 433 (citing Brown, 444 So.2d at 362); Triplett, 633 So.2d at 1013 (citing Brawn, 444 So.2d at 362). Both cases reverse summary judgment. However, in both cases certain factual determinations needed to be resolved in order to determine liability; thus, the facts were "material" and were in dispute. A fact is neither material nor genuinely contested, however, merely because one party proclaims it so. Our review of the record does not reflect that the trial court actually acted as a "finder of fact" despite the label in his order. Instead, we interpret his ruling as determining that the "facts" set forth were not genuinely disputed by contrary evidence. Accordingly, we find no merit to Suddith's challenge in this regard.
I. The Federal-Law Claims.
¶ 11. Suddith filed suit pursuant to 42 U.S.C. § 1983[2] against USM and against Drs. Lucas and Huffman, individually and in their official capacities, alleging violation of his constitutional rights to substantive *1168 and procedural due process, and equal protection.[3]
¶ 12. The trial court determined that USM, as a state entity, is not subject to suit under § 1983. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) (states and state agencies are not within the class of potential defendants under § 1983); Gulf Coast Research Lab. v. Amaraneni 722 So.2d 530, 533(¶ 11) (Miss. 1998) (Institutions of Higher Learning are agents of the state). Moreover, Drs. Lucas and Huffman cannot be sued in their official capacities for monetary damages under § 1983 because "[a]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." Ky. v. Graham, 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (citing Brandon v. Holt, 469 U.S. 464, 471-72, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985)). Will further elaborated that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." Will, 491 U.S. at 71, 109 S.Ct. 2304 (citing Brandon, 469 U.S. at 471, 105 S.Ct. 873). Suddith has not challenged these rulings on appeal.
¶ 13. While a state official may be sued for injunctive relief in his or her official capacity under § 1983 (see Will, 491 U.S. at 71, 109 S.Ct. 2304), the trial court found that Drs. Lucas and Huffman could not be sued in their official capacities for injunctive relief because they no longer had the authority to grant relief as neither was employed with the university at the time of the judgment. In this, the trial court erred. When a public official, sued in his official capacity, dies or leaves office, his successor automatically assumes his role in the litigation. See Hafer v. Melo, 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991); M.R.C.P. 25(d); M.R.A.P. 43(c)(1). Accordingly, the official capacity suit for injunctive relief is not abated as the successors to Drs. Lucas and Huffman could grant any relief ordered by the court. However, as discussed infra, Suddith's claims fail on the merits.
¶ 14. Regarding § 1983 liability as to Drs. Lucas and Huffman individually for monetary damages, the trial court found them entitled to qualified immunity. Suddith argues that qualified immunity is not available to Drs. Lucas and Huffman in their individual capacities because their acts were intentional and contractual issues were involved. We find the trial court did not err in granting qualified immunity.
¶ 15. Qualified or "good faith" immunity "shields state officials from liability unless their conduct violates `clearly established statutory or constitutional rights of which a reasonable person would have known.'" Jacquez v. Procunier, 801 F.2d 789, 791 (5th Cir.1986) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). The defendant-official pleads qualified immunity as an affirmative defense. Harlow, 457 U.S. at 815, 102 S.Ct. 2727 (citing Gomez v. Toledo, 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980)). The purpose of this doctrine is to allow state officials the ability to perform their duties without fear of their every decision being tried in a court of law. Jacquez, 801 F.2d at 791. The *1169 United States Supreme Court has articulated a two-part analytical test for determining when a plaintiffs allegations are sufficient to overcome a defendant's qualified immunity defense in a motion for summary judgment. Baker v. Putnal, 75 F.3d 190, 198 (5th Cir.1996) (citing Siegert v. Gilley, 500 U.S. 226, 231, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991)). "First, the court must determine whether the plaintiff has alleged a violation of a clearly established constitutional right. [Citations omitted.] If the plaintiff fails this step, the defendant is entitled to qualified immunity. If [he] is successful, the issue becomes the objective legal reasonableness of the defendant's conduct under the circumstances." Id. (citing Siegert v. Gilley, 500 U.S. 226, 231, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991); Anderson v. Creighton, 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). Moreover, "[q]ualified immunity protects `all but the plainly incompetent or those who knowingly violate the law.'" Id.
¶ 16. As discussed in the next section of this opinion, Suddith fails to establish that there has been a violation of a clearly established constitutional right. The court determines not only the currently applicable law, but also whether that law was clearly established at the time of the challenged action. Harlow, 457 U.S. at 818, 102 S.Ct. 2727. The plaintiff bears the burden of proving that the rights violated were clearly established at the pertinent time. Davis v. Scherer, 468 U.S. 183, 197, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984). Suddith has failed to do so. Therefore, Drs. Lucas and Huffman, in their individual capacities, are immune. For this reason we do not reach the second part of the qualified immunity test of the objective legal reasonableness of the defendants' conduct.
¶ 17. Suddith contends that qualified immunity does not apply in a contractual setting. He has, however, cited no applicable law supporting his assertion regarding immunity from suit under § 1983. Contrary to Suddith's assertion, we find a great deal of authority that allows for qualified immunity on § 1983 claims in a contractual setting. See, e.g., Rutland v. Pepper, 404 F.3d 921, 923 (5th Cir.2005); Texas ex rel. Bd. of Regents of the Univ. of Tex. Sys. v. Walker, 142 F.3d 813, 818 (5th Cir.1998); Raju v. Rhodes, 7 F.3d 1210, 1215-1216 (5th Cir.1993); Williams v. Texas Tech Univ. Health Sciences Ctr., 6 F.3d 290, 293 (5th Cir.1993); Farias v. Bexar County Bd. of Trs. for Mental Health Mental Retardation Servs., 925 F.2d 866, 875-76 (5th Cir.1991); Connelly v. Comptroller of Currency, 876 F.2d 1209, 1212 (5th Cir.1989); Pruett v. Dumas, 914 F.Supp. 133, 139 (N.D.Miss. 1996). Qualified immunity can be and was only granted by the trial court on Suddith's § 1983 claims. Suddith's "breach of contract" argument is a state-law claim ineligible for a qualified immunity defense. Such is the case in Robinson v. Bd. of Trs., 477 So.2d 1352 (Miss.1985), which Suddith cites. In Robinson, the issue was not, as Suddith argues, that qualified immunity failed to preclude relief because the issue was contractual. The authority Suddith cites, in addition to dealing with state law contract claims and not federal law claims, merely finds "immunity does not bar actions against the state or its political subdivisions brought on a breach of contract theory." Churchill v. Pearl River Basin Dev. Dist, 619 So.2d 900, 903 (Miss.1993) (citing Miss. State Dept. of Welfare v. Howie, 449 So.2d 772, 776-77 (Miss.1984); Cig Contractors v. Miss. State Bldg. Comm'n, 399 So.2d 1352, 1355 (Miss. 1981)). As we have already discussed that suit against USM is improper under § 1983, so the sovereign immunity issue is *1170 irrelevant.[4] We find Suddith's arguments against qualified immunity misplaced. The trial court did not err in finding Drs. Lucas and Huffman individually immune from suit for monetary damages.
¶ 18. Regarding the merits of Suddith's federal law claims, in order to withstand summary judgment, Suddith must provide sufficient evidence that there is a genuine issue of material fact regarding each of his alleged constitutional rights violations.
A. The Procedural and Substantive Due Process Claims.
¶ 19. The Due Process Clause of the Fourteenth Amendment allows that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const, amend. XIV. The initial requirement for either a procedural or substantive due process claim is proving that the plaintiff has been deprived by the government of a liberty or property interest; otherwise, "no right to due process can accrue." Pruett, 914 F.Supp. at 137 (citing Moore v. Miss. Valley State Univ., 871 F.2d 545, 548 (5th Cir.1989); Brennan v. Stewart, 834 F.2d 1248, 1257 (5th Cir.1988)). Suddith does not appeal the trial court's summary judgment regarding his claimed deprivation of a liberty interest; therefore, we will only discuss whether Suddith presents evidence that he has been deprived of a constitutionally protected property interest.
¶ 20. "The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits." Whiting, 451 F.3d at 344 (quoting Bd. of Regents of State Colls, v. Roth, 408 U.S. 564, 576, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). These property interests take several forms, containing certain attributes. Roth, 408 U.S. at 576, 92 S.Ct. 2701. "To have a property interest in a benefit, a person clearly must have more than an abstract need . . . for it. . . . [but instead must] have a legitimate claim of entitlement to it." Id. at 577, 92 S.Ct. 2701. These property interests are not created by the Constitution, but by "existing rules or understandings that stem from an independent source such as state law. . . ." The property interests "secure certain benefits and [] support claims of entitlement to those benefits," Id. Thus courts must look to state law to determine if a state employee has a property right in continued employment. Whiting, 451 F.3d at 344 (citing Roth, 408 U.S. at 578, 92 S.Ct. 2701)). In this regard, the Mississippi Supreme Court has clearly stated that non-tenured faculty, whether they be tenure-track or non-tenure-track, do not have a protected property interest in continued employment either by legislation or regulations. See Hall v. Bd. of Trs. of State Insts. of Higher Learning, 712 So.2d 312, 320(¶ 31) (Miss.1998); Wicks v. Miss. Valley State Univ., 536 So.2d 20, 23 (Miss. 1988). Recognizing these authorities, the trial court determined that Suddith's "allegations that the Defendants damaged him by failing to uphold an alleged contract for a tenure-track position are irrelevant, because only faculty with tenure have an expectation of continued employment beyond the term of the contracts." We agree.
¶ 21. In Wicks, a professor at Mississippi Valley University applied for and was *1171 denied tenure based on a lack of teaching credentials. Wicks, 536 So.2d at 21. The professor then sued alleging due process violations. Id. at 20. The Mississippi Supreme Court, relying on Roth, began its due process analysis by examining Mississippi law to determine if the professor had a property interest sanctioning due process protections. Id. at 22-23. The supreme court reviewed Mississippi Code Annotated section 37-101-15, which sets forth the general powers and duties of the Board of Trustees of the State Institutions of Higher Learning, and sections 37-101-15(b) and (f), which grant authority to the Board for general supervision of all matters incident to the proper functioning of universities and for the employment of professors. Id. at 23. The supreme court found these statutes did "not create a legitimate expectation of continued employment for a non-tenured employee." Id. (citing Montgomery v. Boshears, 698 F.2d 739, 742 (5th Cir.1983)). Nor did the Wicks court find a protected property interest arose from the university's written tenure policy. Id.
¶ 22. Similarly, in Hall a professor, in his fourth year of employment at the University of Mississippi Medical Center, and "on schedule . . . to eventually become eligible for tenure" was informed that his services at UMC would be terminated due to certain findings regarding a claim of sexual harassment. Hall, 712 So.2d at 314(¶ 4), 316(¶ 12). The supreme court held that because Dr. Hall had not been granted tenure by the faculty or Board, he "did not have a legitimate expectation of, nor entitlement to, continued employment at UMC." Id. at 320(¶ 30). The renewal of Dr. Hall's employment contract was also subject to approval of the Board. Id. at 320(¶ 31). As such, the supreme court held that "Dr. Hall did not have a protected property interest in his employment at UMC," and thus he was not entitled to substantive due process protection "as the result of the arbitrary deprivation by government action of a protected property interest." Id.
¶ 23. Under these authorities, it makes no difference whether Suddith was on "tenure-track" as only tenured employees have a property right subject to due process protection. Suddith maintains, however, that his status of "tenure-track" is material as the Faculty Handbook affords him certain rights which were not at issue in Wicks.
¶ 24. At the onset, we must note that Suddith's briefs are less than precise as to the exact nature of these rights. On the one hand, he maintains that he is not advocating for a grant of tenure or of "continuing employment" but for the due process rights enumerated in the Faculty Handbook. On the other hand, he claims that the Faculty Handbook entitles him to a "Third Year Review" and to "six years to attain tenure." At the trial court, he expressly argued that these provisions entitled him to "the years of employment leading to the Third Year Review, i.e, three years [and] to the six years of time to satisfy the criteria for being tenured." The trial court interpreted these arguments as a claim for "pre-tenure tenure" and rejected them.
¶ 25. Suddith cites Robinson for the proposition that the provisions of the Faculty Handbook "are part of the contract of employment." Robinson, 477 So.2d at 1353. The Appellees have not disputed that "in some instances a faculty handbook . . . may well create a property interest in a job" but contend that "this particular handbook" does not do so. The trial court correctly recognized that "[t]he mere existence of a faculty handbook does not create an expectation of continued employment. *1172 It matters what the handbook actually says."[5]
¶ 26. The Faculty Handbook provides "[a]cademic tenure is a status that is granted to college and university faculty members after a probationary period in the profession. It protects them against involuntary suspension or termination of employment except upon stipulated grounds and in accordance with specified procedures." There is no indication in any portion of the Faculty Handbook contained in the appellate record that non-tenured faculty are entitled to protection against involuntary termination or to continuing employment for any period beyond the term of their current contracts. There are two references in the record to a "Third Year Review" and an excerpt from the deposition of Dr. Huffman concerning the tenure-track schedule being six years. There is nothing, however, in these brief references to raise a genuine issue of a tenure-track employee's entitlement to continued employment for the amount of time necessary to reach these stages of the tenure process.
¶ 27. As the supreme court stated in Wicks, "[t]he whole purpose of the distinction between tenured and non-tenured faculty was to give the University discretion over the employment of non-tenured teachers. . . . The institution of tenure has an inexorable internal logic: the very existence of a tenure system means that those teachers without tenure are not assured of continuing employment. See Bd. of Regents v. Roth, supra, (non-tenured college teacher had no constitutionally protected property interest in his job)." Wicks, 536 So.2d at 23 (citing Staheli, 854 F.2d at 125). The trial court correctly determined that Suddith, a non-tenured professor, had no constitutionally protected property interest in continuing employment; thus we affirm summary judgment on his due process claims.
B. The Equal Protection Claim.
¶ 28. The Equal Protection Clause of the Fourteenth Amendment protects individuals "within the State's jurisdiction against intentional and arbitrary discrimination." Vill. of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000). Unlike a due process claim, an equal protection claim does not require a deprivation of liberty or property. Brennan v. Stewart, 834 F.2d 1248, 1257 (5th Cir.1988). Membership in a protected class is based on "race, color, religion, sex, or national origin," for purposes of equal employment. See 42 U.S.C. § 2000e-2(a). If the plaintiff is not a member of a protected or suspect class and there is no infringement of a fundamental right, the government action is subjected "only to the most minimal scrutiny." Delahoussaye v. City of New Iberia, 937 F.2d 144, 149 (5th Cir.1991). The court must then "determine only whether *1173 the government action is a rational means of advancing a legitimate governmental purpose." Id. (citing Thompson v. Gallagher, 489 F.2d 443, 447 (5th Cir.1973)). In Olech, the Supreme Court recognized that "equal protection claims [may be] brought by a `class of one,' where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Olech, 528 U.S. at 564, 120 S.Ct. 1073.
¶ 29. Suddith argues that he is a "class of one" protected by the Equal Protection Clause as described in Olech. Further, he claims whether or not he was treated differently from those professors "similarly situated" is a contested factual issue properly determined by the jury. Suddith argues three points. First, he states that he has been the only professor at USM whose past conduct, before employment with the university, has been inquired about, and that evidence to this effect was presented to the trial court. Second, he states the trial court identified the wrong "similarly situated" class involved. He claims the "similarly situated" class is not faculty members who have had sexual relations with students prior to their employment and were not forthcoming with the information. Instead, Suddith contends that the proper class is tenure-track professors who were not allowed to receive the entitlements of the Faculty Handbook, or alternatively professors whose previous employment experience is used against them. Finally, Suddith claims motive is not an element of proof in an equal protection situation, but whether the government's actions were arbitrary and irrational. Suddith maintains that he was treated arbitrarily and irrationally different from other similarly situated professors because there was only one standard of entitlements for all tenure-track professors and he did not receive it.
¶ 30. In order to withstand summary judgment under his "class of one" claim, Suddith must have established a genuine question of material fact as to whether he "was intentionally treated differently from others similarly situated" and, if different standards were applied, "that there [was] no rational basis for the difference in treatment." Whiting, 451 F.3d 339, 348 (5th Cir.2006) (quoting Olech, 528 U.S. at 564, 120 S.Ct. 1073). We do not find evidence in the record that there is a genuine issue of material fact as to whether Suddith was treated differently than others and could be a "class of one" under Olech. "Similarly situated" individuals must be "prima facie identical in all relevant respects." McDonald v. Vill. of Winnetka, 371 F.3d. 992, 1002 (7th Cir. 2004) (quoting Purze v. Vill of Winthrop Harbor, 286 F.3d 452, 455 (7th Cir.2002)). McDonald recognizes that while, "[a]s a general rule, whether individuals are similarly situated is a factual question for the jury," a court may properly grant summary judgment "where it is clear that no reasonable jury could find that the singularly situated requirement has been met." McDonald, 371 F.3d at 1002 (affirming summary judgment).
¶ 31. In the instant case, the trial court determined that "similarly situated" meant those professors who have not been forthcoming[6] during the application procedure *1174 with their past behavior  specifically those having an affair with a student. Suddith argues that the trial court incorrectly identified the class involved and contends that the correct class is composed of those professors who are tenure-track and do not reap the benefits of the Faculty Handbook. As will be discussed in the next section, there is no genuine issue that Suddith was on tenure-track; however, assuming for the sake of this argument that he was, he gives no evidence to prove his conclusory statement that he has been the only professor at USM treated in this manner and is thus a "class of one." Further, Suddith's purported class is much too broad; we find that the trial court's identified class is much closer to being "identical in all relevant respects" than that proposed by Suddith.
¶ 32. Lastly, the trial court's order does not unnecessarily discuss "motive" and thereby make it an "element" of equal protection, but instead properly analyzes whether the government action is a rational means for advancing legitimate governmental purposes under Delahoussay. Because Suddith is not a member of a protected or suspect class, the governmental action by USM of granting Suddith a one-year contract receives minimal scrutiny by the reviewing court. To this end, Dr. Lucas testified that he "would not knowingly employ a person who had had sex with a student." Also, he stated that he would want this information at the time of employment, not after employment. President Lucas further testified that faculty members having sexual relations with students is not proper moral conduct and, among other things, damages the ability to grade the students fairly. The governmental action of refusing to hire Suddith for more than one year advances the legitimate governmental interest of providing the best possible instructors for students at this State's universities. Suddith provides no evidence that USM's actions do not advance legitimate governmental interests. Thus Suddith's equal protection claim fails.
¶ 33. In summary, on Suddith's federal law claims the trial court properly found that USM, as a state entity, was not subject to suit under § 1983, nor could Drs. Lucas and Huffman be sued in their official capacities for monetary damages under § 1983. The trial court erred in its finding that Drs. Lucas and Huffman could not be sued in their official capacities for injunctive relief because they were no longer employed with the university; their successors could grant relief if the court so ordered. However, because Suddith's § 1983 claim fails on the merits, this error is moot. The trial court properly found Drs. Lucas and Huffman individually entitled to qualified immunity for monetary damages. As for the merits of his § 1983 claims, because Suddith fails in each instance to establish a genuine issue of material fact, the trial court properly granted summary judgment. Specifically, Suddith failed to establish a genuine issue of material fact as to whether he had been deprived of a property interest, thus both his substantive and procedural due process claims fail. Likewise, Suddith's equal protection claim fails because he provides no evidence that he was treated differently than a similarly situated class of individuals. Accordingly, the trial court properly *1175 granted summary judgment On Suddith's § 1983 claims.
II. The State-Law Claims.
¶ 34. The trial court found summary judgment appropriate for each of Suddith's state-law contract and tort claims. In response to a motion for summary judgment, Suddith must present sufficient proof to establish every claim of liability for which he will bear the burden of proof at trial. See Galloway v. Travelers Ins. Co., 515 So.2d 678, 684 (Miss.1987). Suddith fails to meet this burden. Accordingly, we find no error by the trial court's grant of summary judgment.
A. The Breach of Contract Claim.
¶ 35. In a breach of contract claim, the plaintiff must prove by a preponderance of evidence: (1) the existence of a valid and binding contract, (2) the defendant has breached the contract, and (3) the plaintiff has been damaged monetarily. Warwick v. Matheney, 603 So.2d 330, 336 (Miss.1992) (citing 17A C.J.S. Contracts, § 590(d), at 1148).
¶ 36. The trial court determined there to be no genuine issue of material fact as to whether the Appellees breached a contract of employment with Suddith. Finding the Board to have exclusive authority to execute contracts of employment with University personnel, the trial court held that neither USM nor Drs. Lucas or Huffman had any authority to enter a final, binding contract with Suddith and that Suddith had been informed of this limitation in Dr. Walden's April 12, 1994 letter. This letter stated not only that the possible tenure-track appointment was "subject to final approval by the Board of Trustees of State Institutions of Higher Learning," but also that "all contracts of employment at the University are subject to final approval by the Board of Trustees." The court continued that the Board approved  and Suddith accepted  a contract for an appointment of one year only, with the term running from August 17, 1994, to May 18, 1995. Dr. Lucas's letter to Suddith forwarding the employment contract stated, "[t]his appointment is non-tenured and for one year only." Suddith signed the contract, which stated on its face: "one year appointment," and Suddith served that one year's employment. The court determined Suddith's claim that the Appellees entered into a contract with him for a tenure-track position to be "an untenable position under law and the facts."
¶ 37. Suddith claims error in a number of respects. First, he contends there is a factual dispute over "which" employment contract was actually in force. Suddith insists that the "May 1994 contract" was valid and breached by the Appellees. Suddith argues that Dr. Lucas's May 17, 1994 letter to the art department faculty members was a "letter agreement" which conveyed the Board's approval of the April 12, 1994 contract. He contends that since Dr. Lucas signed other documents "for the Board," he was acting as the Board's authorized agent when he sent the May 19, 1994 letter, thereby ratifying it for the Board. He claims that, "[a]t a minimum," there is a genuine issue of material fact as to the Board's ratification as "[t]he May 17, 1994 written contract WAS NEVER REJECTED BY THE BOARD." To quote the trial court, we find this position to be "untenable."
¶ 38. Nothing in Dr. Lucas's May 17, 1994 letter to the art department faculty can be reasonably interpreted to be an indication that Suddith's appointment had been approved by the Board or that Dr. Lucas was acting "for the Board" in sending the correspondence. The letter, in response to "disagreement about [Suddith's] appointment," represented that after *1176 considering all points of view, "Dr. Huffman has recommended that we go ahead with Mr. Suddith's appointment, and I am approving his recommendation." The letter on stationery of the "office of the president" is signed by "Aubrey K. Lucas, President." Nowhere does the letter indicate that the appointment had been approved by the Board  only that Dr. Lucas, as "President," was approving Dr. Huffman's recommendation over the disagreement of certain members of the faculty.
¶ 39. Further, we find no evidence Dr. Lucas was cloaked with such authority that the Board's approval would be unnecessary for an employment recommendation, nor would Dr. Lucas ever be granted such authority in employment situations under statutory or case law. Suddith points us to no other evidence except the form contracts which Dr. Lucas signed "for the Board." These pre-printed words do not give Dr. Lucas authority to hire employees without the approval of the Board, and nowhere in the record do we find evidence of apparent authority by Dr. Lucas. Furthermore, the Mississippi Supreme Court has "held the only way to create a valid employment contract with university personnel is where the Board approves a nomination of the school's president. Bruner v. Univ. of Southern Miss., 501 So.2d 1113, 1115 (Miss.1987) (citing Miss.Code Ann. § 37-101-15(f)). In Bruner, Mr. Bruner made an apparent authority argument similar to Suddith's, arguing against a grant of directed verdict. Id. The supreme court noted that not only must the Board approve all employment contracts, but also an enforceable contract must appear in the official minutes of a public board. Id. The court found because Bruner's employment was not nominated or approved by the Board, directed verdict was proper. Id. at 1116. In our case, the Board's minutes, not Dr. Lucas's May 17, 1994 letter, control, and the minutes indicate Suddith was hired in a non-tenure-track capacity for one year only.
¶ 40. Likewise, we do not find evidence in the record in support of Suddith's contentions that there was a breach of contract. The evidence of the August 18, 1994 Board minutes shows the Board approved and Suddith accepted a one-year contract for employment only. It is undisputed that Dr. Lucas had originally intended to recommend Suddith for a tenure-track position until information about his student affair surfaced. At that point, Suddith's appointment was changed from tenure-track to one-year in duration. Furthermore, Drs. Lucas and Huffman never had authority to enter into a final, binding contract with Suddith unless the Board approved their recommendation. Walden's April 12, 1994 letter stated twice that the tenure-track appointment was "subject to final approval by the Board." In August 1994, the Board did not approve of tenure-track employment but of a one-year term. Suddith contends that the one-year limit was meaningless because "[v]irtually all contracts at USM are for a one-year period." It should be noted, however, that not all professors on the Board's list in its minutes had such a limitation. After Dr. Lucas discovered Suddith's past affair with a student, he wrote a letter to Suddith stating his employment was for one year only and enclosed an employment contract stating such, with no mention of tenure-track. Suddith signed this contract. While Suddith now claims his signature on the contract was coerced, he did not raise any objection until after the contract had been fully performed. Further, he fails to cite any authority as to how this would advance his case as no other contract was even approved by the Board.
*1177 ¶ 41. The trial court determined that Suddith could not establish a breach of contract by claiming that the Appellees failed to act on his grievance in accordance with procedures in the Faculty Handbook, as his grievance, filed May 17, 1995, was filed late. According to the Faculty Handbook, a grievance must be filed "within two weeks of the incident, and the grievant must state to the supervisor that a grievance is being initiated." Moreover, while not expressing in specific terms what aggrieved him, Suddith contends that the incident of which he was complaining did not occur until May 28, 1995. In his letter to Dr. Lucas on May 17, 1995, Suddith wrote that it was his understanding that he had two weeks from the time of the expiration of his one-year contract, or May 18, 1995, to express his grievance. Dr. Huffman responded that Suddith's grievance was untimely and should have been filed within two weeks of the execution of his one-year contract, or within two weeks of November 9, 1994.
¶ 42. In light of the evidence in the record, "the incident complained of must be the terms of his employment. Thus, if Suddith was aggrieved he should have started that process shortly after he signed his employment contract which specified his one-year only appointment. From the record however, Suddith did not complain of this contract until the following May. We agree with the trial court that the Appellees did not breach Suddith's contract by failing to act on his untimely grievance. For the foregoing reasons, we affirm the trial court's grant of summary judgment on Suddith's claims for breach of contract.
B. The Tort Claims.
¶ 43. Suddith's tort claims against the Appellees included negligence, tortious interference with Suddith's employment contract, intentional infliction of emotional distress, negligent infliction, of emotional distress, outrage, promissory estoppel, equitable estoppel, and detrimental reliance. After our review of the record, we agree with the trial court that not only were Suddith's tort claims barred by the Mississippi Tort Claims Act, but also that the discretionary duty exemption granted the Appellees immunity.
1. Whether Suddith's tort claims were properly dismissed by the trial court under the Mississippi Tort Claims Act.
¶ 44. Suddith's state tort claims are governed by the Mississippi Tort Claims Act ("MTCA") (Miss.Code Ann. §§ 11-46-1 through 11-46-23) because this Act "is the exclusive route for filing suit against a governmental entity and its employees." City of Jackson v. Sutton, 797 So.2d 977, 980(¶ 10) (Miss. 2001). Our supreme court has stated that "[a]ny claim filed against a governmental entity and its employees must be brought under this statutory scheme." Id. at 980(¶ 9) (citing Lang v. Bay St. Louis/Waveland Sch. Dist, 764 So.2d 1234, 1236(¶ 9) (Miss.1999)). This Act provides that no employee of a governmental entity "shall be held personally liable for acts or omissions occurring within the course and scope of the employee's duties." Miss.Code Ann. § 11-46-7(2) (Rev.2002). Therefore, Suddith is prohibited from bringing state-law tort claims against Drs. Lucas and Huffman individually. The liability of USM and of Drs. Lucas and Huffman in an official capacity is discussed below.
a. Procedural Requirements under the Mississippi Tort Claims Act.
¶ 45. The Mississippi Legislature, in enacting the MTCA, elected to *1178 waive sovereign immunity. Vortice v. Fordice, 711 So.2d 894, 896(¶ 5) (Miss. 1998). However, certain procedural requirements must be substantially complied with before an action is filed. S. Cent. Reg'l Med. Ctr. v. Guffy, 930 So.2d 1252, 1256(¶ 13) (Miss.2006). First, a plaintiff must exhaust all administrative remedies within a governmental entity before suing the entity. Miss.Code Ann. § 11-46-11(1) (Rev.2002). Then, the plaintiff must file a written notice of a claim with the chief executive officer of the governmental entity ninety days prior to filing suit. Miss. Code Ann. § 11-46-11(1), (2) (Rev.2002). The MTCA notice statute provides several required categories of information that must be included in the notice of claim, which must be in writing and delivered in person. Miss.Code Ann. § 11-46-11(2) (Rev.2002). The notice must contain "a short and plain statement of the facts upon which the claim is based," including the circumstances that brought about the injury, the extent of the injury, the time and place the injury occurred, the names of the persons involved, the amount of money damages sought, the residence of the person making the claim at the time of the injury, and the claimant's residence at the time of filing the notice. Id. While "substantial compliance" in the contents of notice is sufficient, the failure to provide any information regarding even one of the categories described in section 11-46-11(2) prevents a finding of "substantial compliance." Guffy, 930 So.2d at 1258(¶ 19). Further, an employee's filing a grievance with her employer does not constitute substantial compliance with the MTCA notice provisions. Harris v. Miss. Valley State Univ., 873 So.2d 970, 988(¶ 55) (Miss.2004). Additionally, the Mississippi Supreme Court has recently held that strict compliance to the ninety-day notice requirement of section 11-46-11(1) is mandatory. Univ. of Miss. Med. Ctr. v. Easterling, 928 So.2d 815, 819-20(¶ 22) (Miss.2006).
¶ 46. Suddith argues that he was in substantial compliance with the MTCA in that he filed a grievance, USM received a "letter or representation" from Suddith's attorney in July 1995 asking the status of his grievance, he filed suit, extensive discovery ensued, there was no objection to proceeding with suit, and no request for a stay over the ten-year period of this case. He claims that the proper remedy for failure to comply with the ninety-day waiting period is to stay the case, not dismissal. He cites Jackson v. City of Booneville, 738 So.2d 1241 (Miss.1999) as authority for these statements.
¶ 47. Because Suddith failed to file his grievance over his employment contract with USM within a timely manner (as discussed above), he failed to exhaust his administrative remedies. Further, as Suddith did not submit a notice of claim before filing this lawsuit, his time to do so has now expired. The remedy of a stay was abolished in Easterling. See Easterling, 928 So.2d at 820(¶ 22). As to the content of the notice, Suddith's grievance and "letter of representation" do not substantially comply with the notice requirements of section 11-46-11(2) (Rev.2002). The grievance is inadequate for the same reasons stated in Harris: (1) the grievance letter to the Board did not inform the university or the Board of Suddith's intent to file a claim in court; (2) the grievance document was part of the internal appeals process, and the MTCA requires a notice of claim after, administrative remedies have been exhausted; and (3) the university president, not the Board, is the "chief executive officer of the governmental entity," upon whom a notice of claim must be served. See Harris, 873 So.2d at 988(¶ 55). Neither the letter nor the grievance state an amount of damages sought or the extent of *1179 the alleged injury as required in Jackson. Further, Suddith's July letter was not served upon Dr. Lucas, but upon Dr. Clyde Ginn. Accordingly, Suddith has given inadequate notice under the substantial compliance requirement of the MTCA. Thus, we agree with the trial court that Suddith's state-law tort claims are barred for lack of jurisdiction under the MTCA.
b. The Discretionary Function Exemption of the Mississippi Tort Claims Act.
¶ 48. The trial court determined that even if Suddith had given proper notice under the MTCA, the Appellees would be immune from suit under the discretionary function exemption of the Act. A governmental entity and its employees, acting within the course and scope of their employment or duties, are not liable for discretionary functions. Miss.Code Ann. § 11-46-9(1)(d) (Rev.2002). In order to determine whether governmental conduct is discretionary, this court employs the public policy function test articulated by the Mississippi Supreme Court in Jones v. Miss. Dep't of Transp., 744 So.2d 256, 260(¶ 11) (Miss.1999) (citing United States v. Gaubert, 499 U.S. 315, 322, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991)). First the court must determine whether the act involved "an element of choice or judgment." Id. at 260 (¶ 10) (quoting Gollehon Farming v. United States, 17 F.Supp.2d 1145, 1154 (D.Mont.1998)). If it does, the court must decide "whether the choice involved social, economic, or political policy." Id.; see also Stewart v. City of Jackson, 804 So.2d 1041, 1047(¶ 11) (Miss.2002). The second prong of the test protects only those discretionary acts or decisions based upon public policy considerations. Dotts v. Pat Harrison Waterway Dist, 933 So.2d 322, 327(¶ 15) (Miss.Ct.App.2006) (citing Elder v. United States, 312 F.3d 1172, 1176 (10th Cir.2002)). This limitation is to prevent judicial second-guessing of policy decisions through tort actions. Id. "[F]unctions which by nature are policy decisions, whether made at the operational or planning level, are protected." Jones, 744 So.2d at 260(¶ 10) (citations omitted).
¶ 49. Applying the public policy function test, we find that the decision of Drs. Lucas and Huffman to recommend Suddith for only a one-year position after learning of his student affair necessarily involves an act of "choice or judgment." By nature, their administrative positions at USM required them to make these types of choices and judgments regarding faculty. Section 37-101-15(f) of the Mississippi Code Annotated (Supp.2006) provides it to be the policy of the Board "to permit the executive head of each institution to nominate for election . . . all subordinate employees of the institution over which he presides." Nothing in the statute limits the discretion of the executive head, in this case, Dr. Lucas. We further find that Drs. Lucas and Huffman's judgment regarding the hiring of a faculty member involved important social and public policy, such as providing the students of Mississippi at this public university with the best faculty members possible. In his testimony, Dr. Lucas admitted implementing this social policy by avoiding the hiring of faculty who have had affairs with students and dismissing faculty that do. We find the action by Drs. Lucas and Huffman to recommend Suddith for one year's employment instead of tenure-track, after learning of the student affair, was a discretionary act immune from suit under the MTCA.[7]
*1180 2. Proof of the Tort Claims Elements.
¶ 50. The trial court did not discuss Suddith's lack of proof for each tort claim except to state, if analyzed on the merits, Suddith failed to meet his burden of providing evidence to show a genuine issue of material facts regarding these claims. Having determined the tort claims to be barred by the MTCA and the officials immune from suit under the discretionary function exception, we decline to address the individual deficiencies in each of Suddith's tort claims. However, we do address the issues of estoppel which, while designated by Suddith as "tort" are in reality contractual in nature.

Equitable Estoppel/Detrimental Reliance/Promissory Estoppel.
¶ 51. Throughout Suddith's appellate brief and at the trial court level he challenges the propriety of Dr. Lucas stating he would recommend Suddith for a tenure-track position, as Dr. Lucas wrote in his May 17, 1994 letter to the Department of Art, and then changing his mind and only recommending Suddith for a one-year appointment to the Board in October. Suddith did not advance this issue in the context of estoppel, but we consider this to be the most proper place to consider his allegations. As stated earlier, however, we reject the contention that the May 17, 1994 letter was an employment contract.
¶ 52. In order to prove a claim of estoppel, the plaintiff must prove: "(1) a representation that later proves to be untrue; (2) an action by the person seeking to invoke the doctrine, such action being undertaken on justifiable reliance of the representation; and (3) a resulting detriment to that person arising from his action." Miss. Dep't of Pub. Safety v. Carver, 809 So.2d 713, 718(¶ 18) (Miss.Ct. App.2001) (citing Town of Florence v. Sea Lands, Ltd., 759 So.2d 1221, 1229(¶ 29) (Miss.2000)). Promissory estoppel differs from equitable estoppel "in that the representation is promissory rather than as to an existing fact. 31 C.J.S. Estoppel § 80 (1964)." Old Equity Life Ins. Co. v. Jones, 217 So.2d 648, 652 (Miss.1969) (citing Frank Gardner Hardware & Supply Co. v. St. Paul Fire & Marine Ins. Co., 245 Miss. 320, 148 So.2d 190 (Miss.1963)).
¶ 53. Upon first impression, it might appear that Dr. Lucas's implicit representation that he would recommend Suddith for a tenure-track appointment would satisfy the first element of a promissory estoppel claim. However we find, upon closer review, that it does not. In Mississippi, the doctrine of promissory estoppel "may arise from the making of a promise, even though without consideration, if it was intended that the promise should be relied upon and in fact it was relied upon . . . and if a refusal to enforce it would be virtually to sanction the perpetuation of fraud or would result in other injustice." C.E. Frazier Constr. Co. v. Campbell Roofing and Metal Works Inc., 373 So.2d 1036, 1038 (Miss.1979) (quoting 28 Am.Jur.2d Estoppel and Waiver, § 48 (1966)) (emphasis added). Promissory estoppel is an equitable doctrine. Id. (citing Griffith, Miss. Chancery Practice § 24 (2d ed.1950)). It is also considered "a rule of justice which *1181 prevails over all other rules." Koval v. Koval, 576 So.2d 134, 137 (Miss.1991).
¶ 54. In order to establish the existence of promissory estoppel under Mississippi law, it is "essential that the representation relied upon must relate, to a present intention or purpose of the party to be estopped, because a party cannot be precluded from changing his intention in the future." S. Mortgage Co. v. O'Dom, 699 F.Supp. 1227, 1230 (S.D.Miss.1988) (citing Jackson Rapid Delivery Service, Inc. v. Jones Truck Lines, Inc., 641 F.Supp. 81, 86 (S.D.Miss.1986)). The Mississippi Supreme Court explained the theory behind this" "well-settled rule":
A true statement as to the present intention of a party with regard to his future act is not the foundation upon which an estoppel may be built. A person cannot be bound by any rule of morality or good faith, not to change his intention nor can he be precluded from showing such change merely because he has previously represented that his intentions were once different from those which he eventually executed.
Cook v. Farley, 195 Miss. 638, 654, 15 So.2d 352, 357 (Miss.1943) (citing 19 Am. Jur.2d Estoppel and Waiver, § 52).
¶ 55. In this case, it is undisputed that while Dr. Lucas originally intended to recommend Suddith for a tenure-track position, information concerning the student affair came to light after Dr. Lucas had written the letter of May 17, 1994. Once Dr. Lucas learned of the information from the Board member about the affair, and it was investigated by Dr. Huffman and found true, Dr. Lucas changed his mind about the terms of Suddith's employment. Under Mississippi law, Dr. Lucas cannot be estopped from considering this after-acquired information about Suddith's student affair and changing his genuinely held opinion about Suddith's suitability for employment.

CONCLUSION
¶ 56. After a thorough review of the record, we find no evidence to substantiate Suddith's federal-law or state-law claims. Further, Suddith does not provide any material facts necessary to rebut the evidence presented by the Appellees that there are no genuine issues of material facts regarding the claims, thus they fail as a matter of law. We find the trial court did not error in granting summary judgment in favor of the Appellees. Accordingly, we affirm the trial court's summary judgment.
¶ 57. THE JUDGMENT OF THE CIRCUIT COURT OF FORREST COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE AND MYERS, P.JJ., CHANDLER, GRIFFIS, ISHEE AND ROBERTS, JJ., CONCUR. KING, C.J, IRVING AND CARLTON, JJ, NOT PARTICIPATING.
NOTES
[1] Dr. Lucas had also executed Suddith's 1993-1994 employment contract "for the Board.
[2] 42 U.S.C. § 1983 states in pertinent part "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects . . . any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law. . . ."
[3] Suddith also sued for an unspecified violation of the First Amendment. The trial court dismissed that claim as Suddith provided no evidence of prohibited First Amendment speech on a matter of public concern. Suddith does not contest the trial court's grant of summary judgment regarding the alleged deprivation of his First Amendment rights, and we mention this claim no further.
[4] Suddith also argues that a "line of Mississippi cases mirrors conceptually" his statement that there is no immunity in a civil action for damages if the action is ministerial and intentional. He cites Webb v. Jackson, 583 So.2d 946, 951-52 (Miss. 1991) for this proposition. However, again, Webb is not a § 1983 case but a state-law negligence action, which is not comparable for the instant federal analysis.
[5] While Suddith's memorandum brief in response to the motion for summary judgment states that the Faculty Handbook "is voluminous and replete with property rights," including a "Third Year Review" and "six years of time to satisfy the criteria for becoming tenured," the record on appeal contains only ten scattered pages of excerpts from the handbook and does not contain either the three or six year provisions referred to by Suddith. The excerpts, in fact, explain very little of the tenure process.

In Whiting v. Univ. of Southern Miss., 451 F.3d 339 (5th Cir.2006), although factually different from the instant case because it dealt with denial of tenure, the federal court, with much more of the Faculty Handbook before it, nonetheless determined that non-tenured employees do not have property interests that warrant protection under the Due Process Clause. Id. at 346.
[6] Suddith claims a disputed material fact is whether he was "forthcoming" about the reasons he left his former employer, Louisiana College. Dr. Lucas testified that during the interview and hiring process Suddith did not reveal the affair and told Mr. Walden other reasons for his leaving the college. Suddith's affidavit states he "ha[s] always been forthcoming and candid about any questions asked of [him] by USM or anyone else." However, his affidavit makes no claim that he informed anyone at USM of the affair until he Was confronted by Dr. Walden. Suddith admitted at deposition that the affair may have been one of the reasons he left Louisiana College. We do not find Suddith's conclusory statement that he was "forthcoming" sufficient evidence that Suddith was truthful in his assertions over why he left his former employer so as to create a genuine issue of material fact.
[7] Suddith argues that the acts of the Appellees were intentional and malevolent, and thus not discretionary. We reject this contention for two reasons. First, the authority Suddith cites, Webb v. Jackson, 583 So.2d 946 (Miss. 1991), deals with intentional torts, not intentional acts. Second, the Mississippi Supreme Court has explained that Webb and McFadden v. State, 542 So.2d 871 (Miss. 1989) are pre-MTCA cases, and that only the intentional torts noted in the Act itself preclude an individual's claim of immunity. See Duncan v. Chamblee, 757 So.2d 946, 949(¶ 15) (Miss. 1999); Miss.Code Ann. § 11-46-7(2) (Rev. 2002) (employee not acting in course and scope of employment if conduct constitutes "fraud, malice, libel, slander, defamation or any criminal offense").