# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-CP-01296-COA

**PATRICK CLARK A/K/A PATRICK EVANS CLARK A/K/A PATRICK E. CLARK**                    APPELLANT

v.

**WARDEN TRACY A. McDONALD AND MISSISSIPPI DEPARTMENT OF CORRECTIONS**                    APPELLEES

| | |
|---|---|
| DATE OF JUDGMENT: | 12/08/2022 |
| TRIAL JUDGE: | HON. MARGARET CAREY-McCRAY |
| COURT FROM WHICH APPEALED: | SUNFLOWER COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | PATRICK CLARK (PRO SE) |
| ATTORNEY FOR APPELLEES: | OFFICE OF THE ATTORNEY GENERAL BY: WILLIAM R. COLLINS |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED - 04/23/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE BARNES, C.J., GREENLEE AND McCARTY, JJ.**

**BARNES, C.J., FOR THE COURT:**

¶1.     Patrick Clark is an inmate in the custody of the Mississippi Department of Corrections (MDOC).[1]  Clark was found guilty of violating a rule against assault when he stabbed fellow offender Frederick Winston with a "homemade sharpened weapon."  Clark sought administrative relief through MDOC's administrative remedy program (ARP),

---

[1] In 1999, Clark pleaded guilty to the capital murder of his ex-girlfriend and was sentenced to life imprisonment without eligibility for parole.  In 2012, however, Clark's conviction and sentence were set aside due to a defective indictment.  Soon after, Clark was properly indicted for the same charges.  In 2015, a jury found him guilty of capital murder, and he was again sentenced to life imprisonment without eligibility for parole.  This Court affirmed his conviction in *Clark v. State*, 233 So. 3d 832 (Miss. Ct. App. 2017).

requesting that his rule violation be dismissed. Warden Tracy McDonald denied relief. Clark then sought relief in the Sunflower County Circuit Court, which affirmed MDOC's decision. Clark now appeals. Finding no error, we, too, affirm.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

¶2. On November 8, 2021, Clark, while housed in the Mississippi State Penitentiary's Unit 30C, received Rule Violating Report No. 01824510 (RVR), after K9 Officer Devin Booker witnessed Clark stab offender Winston earlier that day. Clark claimed the stabbing was in retaliation for Winston's stealing his address book several months beforehand. Winston used Clark's address book to send photographs, emails, and messages of Winston's "private part" to Clark's friends and family via cell phone. Clark explained that Winston was in a gang and when Clark complained about Winston's actions, the gang members threatened Clark with bodily harm.

¶3. Clark recounted that during the late evening of November 7, Winston and other gang members accosted him in the restroom with "prison-made knives," threatening to kill him. The next day, Warden McDonald, along with Officers Booker, Stanley Flagg, and Larry Craig, entered Clark and Winston's zone, conducting a shakedown. When Winston threatened Clark to keep silent about the previous night's incident, Clark got off his rack and stabbed Winston several times with a "homemade sharpened weapon." MDOC security camera footage showed Clark's stabbing Winston.

¶4. Officer Booker was the staff member who reported the incident and signed the RVR.

2

The RVR stated that Clark violated Rule C-8, "assaultive action against any person or staff member resulting in serious physical injury," and that Clark admitted to the stabbing. Due to the severity of the offense, as punishment, Clark was placed in administrative segregation until the disciplinary hearing, lost all privileges for sixty days, received a recommendation for custody review, and had a freeze placed on his inmate account to pay the medical costs associated with Winston's injuries.

¶5. Supervisor Shirley Harris conducted an investigation, and on December 10, 2021, she completed an incident investigation form documenting Clark's admission to stabbing Winston. However, Clark denied guilt because he claimed the stabbing was in self-defense of the gang members' threats. The next day, Clark received a notice advising him of his disciplinary hearing date, and he signed it.

¶6. On December 13, 2021, at Clark's disciplinary hearing, he was found guilty of violating Rule C-8 based upon his own admission and Officer Booker's statement. The same day, Clark sought administrative relief through MDOC's ARP, requesting to have his RVR dismissed from his institutional record because of alleged violations of MDOC's disciplinary procedures and his due process rights. Clark argued that his RVR did not contain relevant information such as his request for witnesses at the disciplinary hearing; his illegal detention in administrative segregation for fifteen days before his disciplinary

hearing; an improper lapse of twenty-three working days[2] between the incident and the hearing; and MDOC's findings of guilt being based on insufficient evidence.

¶7. In January 2022, MDOC denied Clark relief in its ARP First Step Response form, finding Clark did not specify on his RVR which K9 officers he wanted as his witnesses. Also noted was camera footage of Clark "clearly getting off [his] assigned rack and stabbing Inmate Winston several times in front of staff," validating Officer Booker's statement. In February 2022, having exhausted MDOC's administrative remedies, Clark filed a complaint and "Petition for an Order to Show Cause" in the Sunflower County Circuit Court, requesting dismissal of the RVR and other relief. Clark again argued that his due process rights were violated because he was denied witnesses at his disciplinary hearing; he was illegally detained for fifteen days before his disciplinary hearing; and the decision of the hearing officer was based on insufficient evidence.[3] MDOC then filed its response, arguing the RVR should be upheld. In November 2022, the circuit court denied relief and dismissed Clark's petition, finding sufficient evidence to uphold the MDOC's ARP decision due to Clark's own admission and the reporting officer's statements.

## STANDARD OF REVIEW

¶8. "This Court reviews a circuit court's decision regarding an agency's actions using the same standard of review as trial courts." *Hooghe v. Shaw*, 332 So. 3d 341, 345 (¶12) (Miss.

---

[2] The RVR noted that twenty-three working days had elapsed between the incident and the hearing "due to workload, movement and the investigation."

[3] On appeal, Clark abandons all but the first argument.

4

Ct. App. 2021) (quoting *Roberson v. Fisher*, 303 So. 3d 788, 790 (¶8) (Miss. Ct. App. 2020)). "We look to see whether the circuit court exceeded its authority, bearing in mind that a rebuttable presumption exists in favor of the action of the agency, and the burden of proof is on the party challenging the agency's action." *Id.* "The court examines whether the order of the administrative agency (1) was unsupported by substantial evidence, (2) was arbitrary or capricious, (3) was beyond the power of the administrative agency to make, or (4) violated some statutory or constitutional right of the aggrieved party." *Id.*

## ANALYSIS

¶9. Clark argues that the circuit court erred in upholding MDOC's ARP decision because his procedural due process rights were violated. Clark claims that he was denied the opportunity to present the witnesses he had requested for his disciplinary hearing. We find Clark's argument is without merit.

¶10. "A due process violation occurs where a party is not allowed a full and complete hearing before being deprived of life, liberty or property." *Leavitt v. Carter*, 178 So. 3d 334, 339 (¶17) (Miss. Ct. App. 2012) (quoting *Vaughn v. Vaughn*, 56 So. 3d 1283, 1287 (¶13) (Miss. Ct. App. 2011)). "Thus, 'the initial requirement for either a procedural or substantive due process claim is proving that the plaintiff has been deprived by the government of a liberty or property interest; otherwise, no right to due process can accrue.'" *Id.* (quoting *Suddith v. Univ. of S. Miss.*, 977 So. 2d 1158, 1170 (¶19) (Miss. Ct. App. 2007)). In the context of the prison system, "an inmate is entitled to certain due process rights when

5

'subjected to disciplinary measures for misconduct,'" including the "right to call witnesses and present documentary evidence in defense," unless to do so would jeopardize institutional safety. *Id.* at (¶18) (quoting *Terrell v. State*, 573 So. 2d 730, 731 (Miss. 1990)). Moreover, under MDOC's disciplinary procedures manual, in number 18-01-01 of the standard operating procedures, inmates charged with a rule violation will be allowed the "opportunity to make a statement and present documentary evidence at the hearing and can request witnesses on their behalf; the reason for denying such a request are stated in writing."

¶11. The RVR form was marked, indicating that Clark "request[s] witness(es)," but none were named, only the designation "K9" was written. Clark argues that these designations clearly show he requested K9 officers as his witnesses. Further, he claims that Officer Booker, who filled out the form, failed to complete the form with specific names as a "manipulative error." Clark contends that he told Officer Booker he wanted K9 Officers Craig and Flagg as his staff witnesses because they were present during the incident. However, Clark admits that he did not know these two officers' names at the time, "but officials had a list of them." Clark speculates that, if allowed to testify, these two witnesses would have testified that upon searching Winston during the shakedown, homemade prison knives, cell phones, and drugs were found. Yet Clark does not explain how this testimony would have exonerated him.

¶12. Clark's procedural due process rights were not violated. In compliance with MDOC's disciplinary procedures, Clark received notice of the RVR the same date the

6

incident occurred, was given the opportunity to identify and request witnesses, and was afforded a full and complete disciplinary hearing. Clark signed the RVR on the same date it was issued without any designation of specific witness names other than "K9." If he had desired specific witnesses from the K9 unit, he had the opportunity to designate them at the time he received the RVR, but he did not. Clark blames Officer Booker for inadequately filling out the RVR, yet Clark signed it without any witness names.

¶13. Moreover, even if Officers Craig and Flagg had testified, Clark admitted that they would have only acknowledged that Winston had contraband; the testimony would not have shown Clark's innocence. As the security video and Clark's own admission show, he stabbed Winston. Thus, the outcome of the proceedings would not have changed with the officers' testimony.

¶14. Clark also complains that MDOC violated its standard operating procedures because Officer Harris failed to investigate the incident. Clark claims no documented reports or witness statements were in the record indicating an investigation occurred. However, we cannot say from the record that no investigation was made. The MDOC incident report stated the names of officers who participated in the shakedown, which included Officer Booker, who was the reporting officer who witnessed the stabbing. Further, even if Clark's contention is correct, there was little to "investigate," as Clark admitted to the stabbing, and a security video showed the stabbing. We conclude that Clark's procedural due process rights were not violated.

**CONCLUSION**

¶15. The circuit court did not err in upholding the ARP decision that denied Clark's requested dismissal of his RVR. Accordingly, we affirm the circuit court's order.

¶16. **AFFIRMED.**

**CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**