**Jacqueline PRUETT, Plaintiff,**

**v.**

**Joyce DUMAS, Bill Weeks, Dan Camp, Debra Hicks, and Catherine Jones, Individually, and in Their Official Capacities as Members of the Board of Trustees of the Starkville School District, Defendants.**

**No. 1:95CV83–S–D.**

United States District Court,
N.D. Mississippi,
Eastern Division.

Jan. 31, 1996.

George C. McKee, Miss. State, MS, for Plaintiff.

Dolton W. McAlpin, Starkville, MS, for Defendants.

### OPINION

SENTER, Chief Judge.

First year librarian Jacqueline Pruett brought this § 1983 action seeking damages from the Board of Trustees of the Starkville, Mississippi, School District for its refusal to renew her contract. Ms. Pruett alleges that the school board's action violated both her substantive and due process rights under the Fifth and Fourteenth Amendments to the U.S. Constitution. As both parties have agreed that there are no genuine issues of material fact, the instant case is appropriately postured for a judgment as a matter of law. *See* Fed.R.Civ.P. 56(c).

### Facts

The plaintiff, Ms. Pruett, was a certified professional teacher under a one-year contract with the Starkville school district. She was specifically employed as the school librarian at Ward Elementary. On February 4, 1994, Ms. Pruett volunteered to temporarily teach the "alternative class," (comprised of students with discipline problems), because the regular teacher was going to be late that morning. Shortly after arriving in the classroom, a fourth grade student began to act unruly and disrupt the morning's activities. The incident which ultimately gave rise to the case *sub judice* occurred when the child rapidly moved behind Ms. Pruett while she was writing on the chalkboard with her back to the class. When she turned around and discovered the child standing inches from her face, she was startled and slapped the student with her open palm.

This episode resulted in the suspension of Ms. Pruett's employment for the duration of the school year. In the letter Ms. Pruett received notifying her of the suspension, the district superintendent labeled her slap of the student "unprofessional conduct as well as brutal treatment of a pupil." The letter also informed Ms. Pruett of her right to a hearing before the school board, which she requested and received. At the hearing, Ms. Pruett presented numerous witnesses and had the opportunity to introduce all exculpatory evidence. Despite Ms. Pruett's explanation of the incident, the school board determined that although Ms. Pruett's action was an uncontrollable reflex, the child's sudden movement was nonthreatening. Additionally, the board found that the blow to the child's cheek was substantial, and caused him to cry in the classroom and later report to the principal's office crying. The members concluded that the slap of a student is unacceptable under any circumstances and was particularly so in this instance due to the child's age. Thus, the board voted to uphold the suspension.

Pursuant to Miss.Code Ann. § 37–9–101 *et seq.*, Ms. Pruett appealed the board's decision to the Chancery Court of Oktibbeha County, Mississippi. Prior to the chancellor's issuance of an opinion, the statutory period for extending school employment contracts arrived on April 1. Both the district superintendent and the school board agreed that because Ms. Pruett had not completed the school year, they were bound by policy not to offer her a new contract. Ms. Pruett was again notified that, similar to the suspension procedure, she had the right under the

School Employment Procedures Act to request a hearing and contest the nonrenewal. However, Ms. Pruett chose not to appeal the district's decision, thereby effectively waiving her right to an appeal under state law.

A few months later, the chancellor issued an opinion in which he reversed the board's initial decision and overturned Ms. Pruett's suspension. The court found that because the slap was unintentional, it could not be labeled "brutal treatment." Thus, the chancellor held that the board's decision to suspend Ms. Pruett was arbitrary and capricious, and he ordered the district to pay her $5,885.10 in withheld wages.

Shortly after the Chancellor's decision applying state law, Ms. Pruett filed the instant action in federal court.

### DISCUSSION

■■■ Ms. Pruett has asserted that the nonrenewal of her employment contract violated her due process rights under the Fifth and Fourteenth Amendments to the United States Constitution. However, she did not allege any action by the federal government. The Fifth Amendment restricts the powers of the federal government and does not apply to state actions. *Harrington v. Lauer,* 888 F.Supp. 616, 619 (D.N.J.1995). The Fourteenth Amendment applies to actions by the state. *San Francisco Arts & Athletics, Inc. v. U.S. Olympic Committee,* 483 U.S. 522, 543 n. 21, 107 S.Ct. 2971, 2984 n. 21, 97

L.Ed.2d 427 (1987). Thus, the Fifth Amendment is an inappropriate vehicle for seeking redress of plaintiff's alleged injuries, and summary judgment is granted in favor of defendants as to that portion of this claim.

■■■ Although plaintiff's complaint and brief are less than precise as to the exact nature of the instant action, it seems that Pruett's claim does not directly relate to her suspension, but rather to the nonrenewal of her contract.[1] Although such a conclusion is contrary to the defendants' assertions, Mrs. Pruett's fundamental contention is that she was "wrongfully terminated." In other words, her argument appears to be grounded in the assertion that the Board's decision not to renew her contract was based on her suspension, and since the suspension was found to be wrongful, then the nonrenewal of her contract therefore must also be wrongful.[2] However, the issue before this court does not involve whether the school board properly complied with state law in deciding not to renew Pruett's contract. Pruett did not choose to appeal the board's refusal to rehire her,[3] and this court's function is not to place itself in the role of the Chancellor and determine whether the board was correct. *Staheli v. University of Mississippi,* 854 F.2d 121, 124 n. 2 (5th Cir.1988).

Coupled with the fact that the court's jurisdiction in the instant case is premised upon 42 U.S.C. § 1983, the defendants have claimed they are shielded from liability based

---

1. Pursuant to the doctrine of res judicata, any claim founded upon the initial suspension of Ms. Pruett's employment would be precluded by the decision and remedy previously afforded by the Chancellor. *See McIntosh v. Johnson,* 649 So.2d 190, 192–93 (Miss.1995).

2. Ms. Pruett further contends that the board knew when it upheld the suspension that her noncompletion of the school year would provide it the basis to refuse to renew her contract. Thus, she avers that her suspension constituted a "*de facto* termination." Accordingly, she asserts that at the time of her suspension, the board should have afforded her notice of the fact that her contract would not be renewed. However, the court refuses to accept Ms. Pruett's de facto termination argument. In addition to the fact that she failed to cite any case law applicable to this issue, the relevant Mississippi statute requires that notice of a nonrenewal decision is to be given within the same time period that the

superintendent provides notice of contract extensions. Miss.Code Ann. § 37–9–105. The statute does not require the provision of notice at that imprecise moment when the board may speculate that a particular teacher's contract will not be renewed. The school district complied with the statute's mandates, thereby providing Ms. Pruett the process she was owed. A contrary holding in accordance with the plaintiff's proposed rule would balance the law of procedural due process on a board member's abilities at conjecture and prophesy as to future employment decisions. This the court cannot do.

3. The fact that Pruett failed to take advantage of the hearing that the board offered her does not in and of itself foreclose her federal claim. The Fifth Circuit has held that "the exhaustion of available state administrative remedies is not a prerequisite to commencement of an action in federal court under § 1983." *Brantley v. Surles,* 718 F.2d 1354, 1360 (5th Cir.1983).

on qualified immunity. Therefore, the court's focus at this juncture is limited to the narrow issue of whether the school board infringed upon Pruett's constitutional liberties. *Siegert v. Gilley,* 500 U.S. 226, 231, 111 S.Ct. 1789, 1792–93, 114 L.Ed.2d 277 (1991); *Mount Healthy City Board of Ed. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d. 471 (1977). In this regard, Pruett alleges that the Board's refusal to rehire her deprived her of the protections of two Constitutional guarantees: the right to both substantive and procedural due process. However, Ms. Pruett failed to address the more fundamental concern of whether the board deprived her of a constitutionally protected interest.

■ The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const.Amend XIV. It is evident from this clear language that the threshold requirement of any due process claim, be it substantive or procedural, is a showing that the government deprived the plaintiff of a liberty or property interest. *See Moore v. Mississippi Valley State University,* 871 F.2d 545, 548 (5th Cir.1989); *Brennan v. Stewart,* 834 F.2d 1248, 1257 (5th Cir.1988). Absent such a demonstration, no right to due process can accrue.

### PROPERTY INTEREST

■ A property interest in continued employment with the Starkville School District could only arise if Ms. Pruett had a legitimate claim of entitlement to her teaching job, a claim that would limit the employer's ability to refuse to renew her employment. *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). State law determines whether such a property interest exists. *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 538–39,

105 S.Ct. 1487, 1491–92, 84 L.Ed.2d 494 (1985).

■ The Mississippi statutes relevant to this question provide that the school administrators do not need to demonstrate good cause in justifying a decision not to renew a teacher's contract.[4] Miss.Code Ann. § 37-9-101, *et seq; Mississippi Employment Sec. Com'n. v. Philadelphia Mun. Separate School Dist.,* 437 So.2d 388, 396–97 (Miss. 1983). Such decisions constitute a subjective determination made by the superintendent and are ultimately approved by the school board. *See Mississippi Employment Sec. Com'n.,* 437 So.2d at 392–94, n. 4. In *Olim v. Wakinekona,* the U.S. Supreme Court held that when the receipt of a benefit is conditioned upon the discretionary decision of an administrator, there is no legitimate claim of entitlement to the benefit. *Olim v. Wakinekona,* 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983); *see Wicks v. Mississippi Valley State Univ.,* 536 So.2d 20, 23 (Miss. 1988). *Olim* would be inapplicable to Ms. Pruett's situation if her contract provided for continued employment and if she could have only been terminated for good cause. *See also Cleveland Bd. of Educ.,* 470 U.S. at 538–39, 105 S.Ct. at 1491–92 (1985). However, as evinced above, the relevant contract in this instance was not so restrictive. Therefore, because the legislature had expressly disavowed any implication that the applicable statutes had created a tenure system, and the board's representations and conduct had provided Pruett no basis to justify a belief that her contract would be renewed, Pruett did not possess a property interest in continued employment.

It is true that a property interest existed during the span of Pruett's contract period, and therefore, any dismissal or termination of her contract would have triggered all the protections inherent within the Due Process

---

4. The grounds for nonrenewal and the procedures to be followed are outlined in the School Employment Procedures Law, sections 37-9-101 *et seq.,* which states:

It is the intent of the legislature to establish procedures for providing public school employees notice of the reasons for not offering an employee a renewal of his contract, to provide an opportunity for the employee to pres-

ent matters in extenuation or exculpation to enable the Board to determine whether the recommendation of non-employment is a proper employment decision and not contrary to law, *and not to establish a system of tenure or require that all decisions of nonreemployment be based upon cause with respect to employment in the school district.* [Emphasis added].

clause. *McDonald v. Mims,* 577 F.2d 951, 952 (5th Cir.1978); *Harris v. Canton Pub. School Bd. of Ed.,* 655 So.2d 898, 902 (Miss. 1995). However, the instant case does not involve a dismissal, but is instead founded upon the nonrenewal of a contract. Pruett only possessed a property interest in the continuation of her employment for the specified contractual period. After Pruett's contract had expired, she did have certain procedural rights, but she did not have a protected property interest in her teaching position. *Housley v. North Panola Consol. School Dist.,* 656 F.Supp. 1087, 1090–91 (N.D.Miss. 1987). Therefore, as Pruett cannot demonstrate the existence of an entitlement to continued employment, she must present proof that the school board deprived her of a constitutionally protected liberty interest to maintain her cause of action.

### *LIBERTY INTEREST*

■ A constitutional deprivation of liberty occurs when there is some injury to employment or employment opportunities in addition to damage to reputation and a subsequent denial of procedural due process to redress that injury. Although Pruett's brief failed to address the liberty or property interest prong of due process analysis, the possible liberty interests which are implicated in Ms. Pruett's circumstance include harm to her reputation, harm to her above mentioned expectation of continued employment, and harm to her opportunity to obtain future employment. However, none of these interests assert a cognizable claim in this instance.

■ The court has demonstrated above that Pruett did not have a sufficient interest in her continued employment to allow her alleged injury to constitute the deprivation of a protected interest. Secondly, mere allegations of damage to one's reputation or the impairment of future employment prospects fail to state a claim of denial of a constitutional right. *Texas v. Thompson,* 70 F.3d 390, 392 (5th Cir.1995) (citing *Siegert,* 500 U.S. at 233–34, 111 S.Ct. at 1793–94). Thus, Ms. Pruett has failed to assert a liberty interest, and her alleged injuries cannot gain redress under the Fourteenth Amendment.

In the alternative, assuming that Pruett could demonstrate the deprivation of a sufficient interest to implicate constitutional safeguards, the Supreme Court has identified three categories of § 1983 claims that may be brought against the state pursuant to the Due Process Clause. *Curro v. Watson,* 884 F.Supp. 708, 716 (E.D.N.Y.1995) (citing *Zinermon v. Burch,* 494 U.S. 113, 125, 110 S.Ct. 975, 983, 108 L.Ed.2d 100 (1990)). Ms. Pruett's cause of action does not fall within the first of these examples, as she does not assert a violation of any of the rights protected by the Bill of Rights (e.g., she does not allege that her contract was not renewed due to the exercise of her free speech rights). *See Zinermon,* 494 U.S. at 113, 110 S.Ct. at 976–77.

■ "Second, the Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them.'" *Id.* (quoting *Daniels v. Williams,* 474 U.S. 327, 331, 106 S.Ct. 662, 664, 88 L.Ed.2d 662 (1986)). Again however, Ms. Pruett cannot assert a right vouchsafed to her by the Fourteenth Amendment. For plaintiff's claim to fall with the aegis of substantive due process protection, the court would have to find that the board's action was not rationally related to some legitimate governmental interest. However, the decision not to rehire Ms. Pruett complied fully with the legitimate purposes of the applicable Mississippi statutes. The statutory provisions do not require a superintendent and school board to justify their employment decisions with a showing of cause. This allows the school district to extend or not extend contracts with only the best interests of the educational system in mind, independent of any concerns regarding the creation of tenure for a particular employee. Therefore, as the legitimate end of the statute was to provide the districts the freedom to determine what employees were necessary to serve best the students in their care, the court finds that a rational relationship exists between this goal and the nonrenewal of Ms. Pruett's one year contract.

Lastly, a § 1983 action also may be brought for a violation of procedural due process. In this third category however, "the deprivation by state action of a constitutionally protected interest in 'life, liberty or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law.*" *Zinermon,* 494 U.S. at 125, 110 S.Ct. at 983 (emphasis in original) (quoting *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981)). Such protection necessarily presupposes that a public employer has unconstitutionally deprived its employee of due process if it discharges her under stigmatizing circumstances without giving the employee an opportunity to clear her name. *Arrington v. County of Dallas,* 970 F.2d 1441, 1447 (5th Cir.1992). In order to maintain a cause of action in such a circumstance, a plaintiff must prove:

(1) that she was a public employee; (2) that she was discharged; (3) that stigmatizing charges were made against her in connection with his discharge; (4) that the charges were false; (5) that the charges were made public; (6) that she requested a name-clearing hearing; and (7) that the hearing was denied.

*Arrington,* 970 F.2d at 1447.

Without discussing the merits of the initial five elements of this standard, it is clear from the record that this aspect of Pruett's claim must fail. The circumstances of Pruett's nonrenewal simply do not satisfy the final two requirements of the Fifth Circuit's test. It is an uncontested fact that Pruett was offered a hearing at the time the board approved the decision not to renew her contract. It is also uncontested that Pruett failed to avail herself of this "name-clearing" opportunity. In applying these circumstances to the *Arrington* standard, not only did Pruett not request a hearing, but when the board offered her the opportunity of an appeal, she refused. *Id.* *See In re Selcraig,* 705 F.2d 789, 796 (5th Cir.1983) (state need only inform allegedly stigmatized employee that opportunity to clear name exists upon request).

Therefore, Pruett has not satisfied the threshold requirements of a due process violation, nor has she properly rebutted defendant's claim of qualified immunity, in that she failed to establish a deprivation of either a property or a liberty interest. Moreover, even when the court provides Pruett the benefit of assuming that she was deprived of certain liberty interests, her particular injuries only implicate procedural guarantees (which the school board satisfied), and do not properly give rise to substantive due process rights. *In re Selcraig,* 705 F.2d at 796. It is clear then that Pruett's alleged injuries did not represent deprivations of a protected interest, and alternatively, any potential harm was remedied through the board's provision of all of the process and constitutional protections mandated in such a circumstance.

It should be noted that the court empathizes with Ms. Pruett due to the circumstances she has been forced to endure as a result of this incident. There is no evidence that she was not, and is not, a fine educator. Nor is it alleged that she did not sincerely care about those children in her charge. However, it must be reiterated that every alleged wrong does not have a federal remedy, and more specifically, every unfortunate nonrenewal of an employment contract does not give rise to a claim under the U.S. Constitution. Absent evidence that a state actor deprived a plaintiff of a constitutionally protected interest, no federal cause of action can be maintained.

The court therefore holds that for the above stated reasons, Ms. Pruett has failed to state a claim upon which relief can be granted, and the entry of judgment as a matter of law in favor of the defendants is warranted.

An ORDER in accordance with this opinion shall be filed contemporaneously herewith.

### FINAL JUDGMENT

Pursuant to an opinion filed contemporaneously herewith, it is ORDERED:

The defendants' motion for summary judgment is well taken, and all claims are dismissed with prejudice.

SO ORDERED.