28 So.3d 650 (2009)
Steve LACROIX, Appellant,
v.
MARSHALL COUNTY BOARD OF SUPERVISORS, Eddie Dixon, Keith Taylor, Willie Flemon, George Zinn, Ronnie Joe Bennett, Marshall County Planning Commission, Conway Moore, Steve Wilson, Larry Hall, Kay Brownlee, C.W. "Chuck" Thomas and Susie Hill, Appellees.
No. 2008-CP-00477-COA.
Court of Appeals of Mississippi.
August 18, 2009.
Rehearing Denied December 8, 2009.
Certiorari Denied February 25, 2010.
*652 Steve LaCroix (pro se), appellant.
Kent E. Smith, Catherine M. Williams, attorneys for appellees.
Before KING, C.J., BARNES and ISHEE, JJ.
BARNES, J., for the Court.
¶ 1. Steve LaCroix, appearing pro se, appeals the judgment of the Chancery Court of Marshall County. Finding reversible error only as to the grant of summary judgment on the Mississippi Open *653 Meetings Act claim, we affirm in part and reverse and remand in part.

STATEMENT OF FACTS AND PROCEDURAL HISTORY
¶ 2. This dispute involves what LaCroix, a property owner in Marshall County, believes to be an "ongoing campaign to harass" and "intimidate" him by the Marshall County Board of Supervisors (Board) and various other Marshall County governmental entities, officials, and employees. LaCroix owns a home and several rental properties in Byhalia, Mississippi.
¶ 3. On July 2, 2007, LaCroix appeared before the Board to answer a complaint regarding the property at his home address of 384 River Ridge Circle in Byhalia being "in such a state of uncleanliness as to be a menace to the public health and safety of the community as well as being an eyesore to residents."[1] The Board had also mailed a letter to LaCroix's mortgage holder informing it that a possible lien might be placed on LaCroix's property associated with the cost of cleaning the property. After the meeting, the Board, satisfied with LaCroix's responses, resolved the matter in his favor and determined that the County would not have to conduct a cleanup of his property. The Board also notified the mortgage holder of this positive outcome. LaCroix admits that the present action does not concern the Board's actions regarding the unclean property as he has a case pending in the United States district court on this matter. He explains that it provides the background for why he wanted to review certain public records.
¶ 4. Unrelatedly, on July 25, 2007, one of LaCroix's former tenants informed him that when he tried to renew his automobile tag at the Marshall County Tax Collector's office that day, he could not because records showed the tenant was delinquent on garbage collection fees at his rental property at 372 River Ridge Road in Byhalia, Mississippi. The record shows the account was set up in the tenant's, not LaCroix's, name.[2] LaCroix claims neither he nor the tenant received a notice of delinquency for these fees. The delinquency caused a lien to be placed on the tenant's automobile tag. That day, the tenant paid the $141.40 in delinquent fees for garbage collection services from September 2006 through July 2007, so he *654 could obtain his tag.[3] LaCroix then inquired about the lien with the County Administrator's office and demanded his tenant be issued a refund for fees the County "wrongfully collected" from the tenant and to submit to him copies of the unpaid fees so he could pay them. LaCroix claims he was told by Larry Hall, the County Administrator, simply to reimburse his tenant and "all would be settled." On July 31, 2007, LaCroix alleges that he sent a request to the Board and Hall detailing what documents he wanted copied "relevant to the illegal collection made from LaCroix's tenant."
¶ 5. In August 2007, LaCroix claims that "[a]s a result of the harm caused by the Defendant's notice" to the mortgage holder of LaCroix's homestead property accusing him of unclean property, he began a series of visits to various county governmental entities in what he claims was an attempt to inspect public records to obtain proof for his mortgage holder that there was no need for a Board hearing about his property. LaCroix also attempted to obtain information about the garbage account at 372 River Ridge Road. LaCroix carried a tape recorder with him and taped his conversations with the various county officials and employees during his visits for public records.
¶ 6. On August 6, 2007, LaCroix appeared at the Marshall County Planning Commission ("Planning Commission") to copy public records. Before his visit, on August 2, LaCroix faxed a letter to the Planning Commission, stating he was coming on August 6 to "inspect and copy records maintained by your office." He claimed a list was attached to the letter with eighteen items.[4] During his visit, LaCroix spoke with Steve Wilson, an employee of that office. In the transcription of the conversation, when Wilson asked LaCroix what records he wanted to see, LaCroix responded, "just an abundance of records, miscellaneous. When I review them, I'll tell you what I need as I need them." Wilson responded that he did not know if he could authorize that, and he was under the impression the office needed a 30-day notice of specifically identified records.
¶ 7. On August 6, 2007, LaCroix also received a letter from Board attorney Kent Smith, dated August 3, 2007, in response to LaCroix's faxed August 2, 2007, request, informing LaCroix that because of the impending elections on August 7, 2007, the Planning Commission could not comply with his request to copy and inspect records from August 6, 2007, through August 10, 2007; however, the Planning Commission would comply with LaCroix's request after August 10, 2007.[5]
¶ 8. Additionally, on August 6, LaCroix also wrote a letter to C.W. Thomas, Clerk for the Board and the Chancery Court, stating that he intended "to review and copy public records maintained by [that] office on August 9, 2007." LaCroix provided a list of items to inspect in the letter, such as the calendar of Board hearings, *655 handwritten notes regarding the hearing on July 2, 2007, and minutes of certain executive sessions of the Board.
¶ 9. On or about August 7, 2007, LaCroix appeared at the County Administration office pursuant to a letter LaCroix had faxed on August 2, stating his intention to review or copy "all records related to the collection of unpaid garbage fees by your office." A transcription of the conversation shows when he arrived at this office, LaCroix announced to Kay Brownlee, Assistant County Administrator, that he needed "to look at and copy some files you've got" and claimed he faxed her on his request several times. Brownlee explained to LaCroix that the office did not actually perform the garbage fee billing, but R.E.S., the county's garbage collector, maintained these records. LaCroix also asked to see a notice of delinquency, which he stated state law required. Brownlee instructed LaCroix to speak with the Board's attorney, Smith. Before leaving, LaCroix requested a printout from a computer, but Brownlee declined, stating it would take "forever" to print.
¶ 10. On August 9, 2007, LaCroix appeared at Chancery Clerk Thomas's office to inspect and copy records. LaCroix was told that due to the impending elections, it was not feasible to make copies of all of the records he wanted in such a short time. Thomas offered to make the records available at a later time, and LaCroix agreed to return on August 15, 2007.
¶ 11. On August 14, 2007, LaCroix notified Thomas, the Board, and Smith that he required a copy of the records in possession of Thomas that "contained exculpatory evidence" regarding the matter of his homestead property brought before the Board on July 2. LaCroix sent a letter to the Board and Smith of his intentions, stating he would be in Thomas's office on August 21, 2007, to copy records he had already requested, as well as to receive audio recordings of the Board's meetings on August 6 and 13, 2007. On August 15, 2007, LaCroix returned to Thomas's office and later claimed he was provided some, but not all, of the records he had requested; in particular, he was not given the handwritten personal notes of the Board concerning a meeting in August.[6]
¶ 12. On August 20, 2007, LaCroix, appearing pro se, filed suit in the Marshall County Chancery Court against numerous defendants, including the Board; individual supervisors: Eddie Dixon, Keith Taylor, Willie Flemon, George Zinn, and Ronnie Joe Bennett; the Planning Commission; Planning Commission employees Conway Moore and Wilson; County Administrator Hall; Assistant Administrator Brownlee; Susie Hill (employee of the Board); and Chancery Court Clerk Thomas, collectively referred to as "the County." LaCroix's tenant was not a party to this action. LaCroix claimed that the County deliberately "embarked on a course of malicious conduct designed to impede [his] access to inspect and copy exculpatory evidence held by their offices as public records" which LaCroix wanted in order to "vindicate [himself] as a result of the malicious prosecution of July 2, 2007."
¶ 13. LaCroix claimed several causes of action, including: violation of the statute regarding the assessment of garbage fees and related notice of lien codified at Mississippi Code Annotated section 19-5-22 (Rev.2003); violation of the Mississippi Open Meetings Act, because the Board has *656 been and continues to hold "secret meetings under the guise of executive session"; violation of the Mississippi Public Records Act of 1983 for denial of records on three instances: August 6, 2007, at the Planning Commission office; August 8, 2007, at the County Administrator's office; and August 15, 2007, at the clerk of the chancery court and Board's office; violation of Mississippi Code Annotated section 97-11-37 (Rev. 2006) for failure of the county officials and employees to perform a required duty; and violation of 42 U.S.C. § 1983 and the Mississippi Constitution for lack of notice of the lien pertaining to the unpaid garbage fees and for all of the above alleged violations. LaCroix complained that the defendants were aware that more than one of his parcels of property were liable for garbage fees but made "a malicious, wrongful and unlawful collection from plaintiff's tenant in order to simplify their duties." Finally, LaCroix requested punitive damages of $10,000 per violation to be assessed against each defendant individually, statutory fines and penalties imposed individually, and a judgment of $100,000 for the County's alleged violation of LaCroix's civil rights.
¶ 14. LaCroix filed a motion for summary judgment, and the County filed a response and a cross-motion for summary judgment. The chancellor issued an opinion on January 10, 2008, granting partial summary judgment to LaCroix regarding his denial of public records on August 15, 2007, for information he requested via the letter on August 6, 2007, pertaining to the Board; and on August 6, 2007, for records he requested from the Planning Commission on August 2, 2007. In the first instance, the court found the denial was willful and knowing, and LaCroix was awarded a civil penalty of $100 against the Board. In the second instance, the court held it was unclear whether this violation was "willful" under the language of the public records' statute, so the matter was remanded for a hearing regarding any potential relief under Mississippi Code Annotated section 25-61-15 (Rev.2006) and the reasonable expenses incurred by LaCroix. In both instances, the public entities were ordered to produce the records LaCroix requested. Further, the court dismissed LaCroix's claim of a Public Records Act violation by the Board and County Administrator for his July 31, 2007, request for documents. The chancellor also found: LaCroix failed to demonstrate any damages incurred by the alleged actions of the County with respect to the alleged public records violations already discussed above, his former tenant's payment of the garbage fees, the Open Meetings Act claim, and the section 1983 claim. Specifically, the chancellor found that there was insufficient evidence to show a violation of the Open Meetings Act, the enforcement of which is pursuant to Mississippi Code Annotated section 25-41-15 (Rev.2006); relief requested under section 97-11-37, a criminal statute, was inapplicable; and LaCroix failed to articulate a constitutional right that was violated when the County collected garbage fees from LaCroix's tenant and that he failed to show any actual damages for his 42 U.S.C. section 1983 claim. Accordingly, the chancery court found that since LaCroix had failed to demonstrate any compensable harm suffered, the County was entitled to summary judgment against all of LaCroix's claims with the exception of the two Public Records Act violations of August 6 and August 15, and the relief for them would be granted pursuant to statute.
¶ 15. On January 14, 2008, the chancellor issued a corrected opinion to remove any reference to LaCroix's related federal actions. Subsequently, LaCroix filed a motion to reconsider the partial summary judgment. In it, LaCroix stated *657 that he now had possession of evidence not available to him when he filed his motion for summary judgment which would prove an Open Meetings Act violation by the Board.[7] LaCroix also noted that the chancellor failed to address his August 2, 2007, request for records and subsequent August 7, 2007, appearance at the County Administrator's office.
¶ 16. On February 1, 2008, a hearing was held on the specific issues enumerated in the January 10 opinion. The chancellor, ruling from the bench and then issuing a judgment on February 20, 2008, denied LaCroix's motion to reconsider relating to the Open Meetings Act and section 1983 violations. However, the County was ordered to produce to LaCroix, from R.E.S. or any other sources, all records pertaining to the garbage account at 372 River Ridge Road, the complete history of the establishment of the account and collection efforts, and any notices that were sent about lack of payment of the garbage fee. The court also ordered that: LaCroix pay the bill for reasonable charges for the service and cost of copying the records; the Board and the County Administrator's office each be assessed a $100 civil penalty for the willful and knowing violation of the Public Records Act;[8] the County pay LaCroix $512.46 for the cost and expenses incurred in bringing the action for violation of the Public Records Act; and LaCroix was ordered to pay the County $206 in satisfaction of its prior bill of $353, representing copy costs and Smith's time to obtain and compile the records.[9] The court directed the parties to comply with the judgment within two weeks of the February 1, 2008, hearing.
¶ 17. Both parties filed several post-judgment motions. The County filed a motion for contempt against LaCroix, who filed a Mississippi Rule of Civil Procedure 52 motion to alter or amend the judgment. LaCroix also filed a motion for contempt and a motion for sanctions against the County. On March 14, 2008, a hearing was held on the post-judgment motions. The court entered an order on March 24, 2008, memorializing the chancellor's ruling from the bench. The court dismissed with prejudice LaCroix's motions to alter or amend judgment, for contempt, and for sanctions, as well as the County's motion for contempt, which had been withdrawn due to LaCroix's compliance with the previous court order.
¶ 18. LaCroix filed his notice of appeal on March 17, 2008.

STANDARD OF REVIEW
¶ 19. This Court's standard of review regarding a chancellor's determinations is well established. The chancellor's findings of fact shall not be disturbed on appeal unless the findings are "manifestly wrong, clearly erroneous, or not supported by substantial credible evidence." City of Picayune v. S. Reg'l Corp., 916 So.2d 510, 518(¶ 22) (Miss.2005) (citing Brown v. *658 Miss. Dep't of Human Servs., 806 So.2d 1004, 1005(¶ 4) (Miss.2000)). "Where there is substantial evidence to support the chancellor's findings, this Court is without the authority to disturb the chancellor's conclusions. ..." Id. at 518-19(¶ 22) (citing In re Guardianship of Savell v. Renfroe, 876 So.2d 308, 312(¶ 4) (Miss.2004)). While deference is given to the chancellor's determinations of fact, this Court retains a de novo review of all questions of law. Id. at 519(¶ 23).
¶ 20. This Court also utilizes a de novo standard of review in analyzing the propriety of summary judgments. Stallworth v. Sanford, 921 So.2d 340, 341(¶ 5) (Miss. 2006) (citing Davis v. Hoss, 869 So.2d 397, 401(¶ 10) (Miss.2004)). "[T]he `pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any,' properly before the trial court, will be reexamined by this Court to determine if there is any genuine issue of material fact." Suddith v. Univ. of S. Miss., 977 So.2d 1158, 1166(¶ 6) (Miss.Ct. App.2007) (quoting M.R.C.P. 56(c)). Evidence is reviewed in the light most favorable to the party against whom the motion is made. Stallworth, 921 So.2d at 341(¶ 5). "If there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law, summary judgment should be entered in his favor." Id. at 342(¶ 5) (quoting Davis, 869 So.2d at 401(¶ 10)). Of course, the non-moving party's burden of rebuttal arises "only after the moving party has satisfied its burden of proving that no genuine issue of material fact exists." Foster v. Noel, 715 So.2d 174, 180 (¶ 35) (Miss.1998).

ANALYSIS

1. Mississippi Code Annotated section 19-5-22 (Rev.2003) and 42 U.S.C. § 1983 (2006) Claims[10]
¶ 21. LaCroix argues that the chancellor erred in granting partial summary judgment to the County and dismissing his claims under section 19-5-22[11] and section *659 1983. Specifically, LaCroix states that section 19-5-22(4)(a) requires the Board to notify the owner of the property receiving garbage collection of a delinquency before any action is taken, such as imposition of a lien. Because he, as landowner, did not receive a notice or a hearing of this action, LaCroix argues that his constitutional due process rights were violated under section 1983 and the Mississippi Constitution. Also, LaCroix maintains that section 19-5-22(1) makes clear that a tenant shall not be liable for the failure of the property owner to pay the garbage collection fees if these services are a part of the tenant's lease agreement; therefore, the County violated this statute by wrongfully requesting and accepting the delinquent garbage fees from his tenant.
¶ 22. LaCroix also argues that because the County did not raise any genuine issues of material fact, he is, therefore, entitled to judgment as a matter of law. In reviewing the grant of summary judgment in favor of the Defendants on these claims, we first note the correct burden of proof. Since LaCroix initially moved for summary judgment, it was his, and not the County's, burden to prove no genuine issue of material fact existed. The burden would shift to the County to rebut LaCroix's contentions only once he had provided evidence no genuine issue of material fact existed. See Foster, 715 So.2d at 180(¶ 35). Further, once the County filed a cross-motion for summary judgment on these claims in response to LaCroix's motion for summary judgment, LaCroix retained the burden of persuasion as he ultimately would bear the burden of proof at trial. See Palmer v. Biloxi Reg'l Med. Ctr., Inc., 564 So.2d 1346, 1355 (Miss.1990) (burden of producing evidence at the summary judgment hearing relates to burden of proof at trial on same issue).
¶ 23. The chancellor found that LaCroix failed to articulate a constitutional right that was impinged upon by the County's alleged violation of section 19-5-22,[12] and he failed to demonstrate he had suffered any actual damages or compensable harm as a result of the actions of the County. Therefore, partial summary judgment was awarded to the County on LaCroix's claim.
¶ 24. To state a claim under 42 U.S.C. § 1983 (2006), the plaintiff must allege facts showing that: (1) he has been "deprived of a right `secured by the Constitution and the laws' of the United States, and (2) the deprivation was caused by a person acting `under color of' state law." Bass v. Parkwood Hosp., 180 F.3d 234, 241 (5th Cir.1999) (quoting Flagg Bros. v. Brooks, 436 U.S. 149, 155, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978)). The plaintiff also has the burden of showing that "[t]here exists a direct casual connection without intervening factors between the deprivation and some injury to the plaintiff[;] *660 ... [t]he act or omission by the defendant was intentional or at least deliberately indifferent to the Constitutional or Federal law rights of the plaintiff[;] ... [t]he plaintiff suffered actual injury[;]. ... and ... [d]amages as a proximate result of the injury. ..." Harris v. Miss. Valley State Univ., 873 So.2d 970, 983(¶ 31) (Miss. 2004) (internal citations omitted) (emphasis added). A section 1983 action may be brought "to vindicate the federally protected rights of persons injured by the acts of state and local officials. ... and can be brought only by the person ... suffering the injury." David W. Lee, 2007 Handbook of Section 1983 Litigation § 1.02 (2007) (citing Conn v. Gabbert, 526 U.S. 286, 292-93, 119 S.Ct. 1292, 143 L.Ed.2d 399 (1999)). "The plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." Conn, 526 U.S. at 292-93, 119 S.Ct. 1292 (quoting Warth v. Seldin, 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)).
¶ 25. The chancellor found that LaCroix did not prove an injury to himself as required to bring a section 1983 claim, and we agree. The Fourteenth Amendment bars the state from depriving any person of "life, liberty or property, without due process of law." U.S. Const. amend. XIV. The initial requirement for either a procedural or substantive due process claim is proving the plaintiff has been deprived by the government of a liberty or property interest; otherwise, "no right to due process can accrue." Pruett v. Dumas, 914 F.Supp. 133, 137 (N.D.Miss. 1996). Substantively, LaCroix argues the County's actions deprived him of the property/economic interest of his tenant's wellbeing and rent. The lien, however, was against the tenant, not LaCroix, and LaCroix's tenant was not a party to this action. While the lien may not have been properly established, the tenant was the person inconvenienced by it, not LaCroix. The tenant had to pay the fees before he obtained his automobile tag. Furthermore, while LaCroix reimbursed his tenant for the amount of delinquency, the amount of delinquency has not been contested as incorrect. It is the imposition of the lien, not the fee, which is contested by LaCroix. Even LaCroix, in his claims before the chancery court, refers to the "illegal collection made from LaCroix's tenant." Nor is there any evidence in the record that his tenant ceased renting property from LaCroix as a result of this incident, or any other negative repercussions.[13] We find no error in the chancellor's granting partial summary judgment in favor of the County on LaCroix's section 1983 claim regarding violation of section 19-5-22 as it was LaCroix's tenant, and not LaCroix, who sustained any alleged injury.

2. Mississippi Open Meetings Act Claim
¶ 26. LaCroix alleges in his complaint that the Board held "secret meetings under the guise of executive session." LaCroix contends the clerk of the Board, Thomas, willingly participated in these meetings and did not properly record the minutes while the Board was in executive session. He concludes that since there were "no final minutes of executive sessions" of the Board, this is the "proof" that the Board is in violation of the Act. The chancellor, however, found there was insufficient evidence to show a violation of the *661 Open Meetings Act and granted summary judgment in favor of the County on this claim.
¶ 27. Regarding minutes, the Open Meetings Act states in part:
Minutes shall be kept of all meetings of a public body, whether in open or executive session, showing the members present and absent; the date, time and place of the meeting; an accurate recording of any final actions taken at such meeting; and a record, by individual member, of any votes taken; and any other information that the public body requests be included or reflected in the minutes. The minutes shall be recorded within a reasonable time not to exceed thirty (30) days after recess or adjournment and shall be open to public inspection during regular business hours.
Miss.Code Ann. § 25-41-11(1) (Rev.2006) (emphasis added). A public body may enter into executive session for a variety of reasons. See Miss.Code Ann. § 25-41-7(4) (Rev.2006).
¶ 28. LaCroix contends that the Board is improperly operating "closed door sessions... to discuss public business out of sight and sound of the public" and does not keep minutes of these sessions. We interpret LaCroix as making two separate Open Meetings Act claims: the minutes do not properly support the reason for entering into executive session, and the minutes of the executive session are insufficient.
¶ 29. As to the first claim, LaCroix quotes the following from Hinds County Board of Supervisors v. Common Cause of Mississippi, 551 So.2d 107, 111-12 (Miss. 1989):
The reason given [for going into executive session], of course, must be meaningful. It must be more than some generalized term which in reality tells the public nothing. To simply say, "personnel matters," or "litigation," tells nothing. The reason stated must be of sufficient specificity to inform those present that there is in reality a specific, discrete matter or area which the board had determined should be discussed in executive session.
. . . .
The board should not be required to give the reason for going into executive session in such detail as to defeat the very purpose of going into executive session. At the same time, it must, as above noted, disclose enough so that the audience can know in fact that there is some specific area of matter that the board has wisely concluded should, for the time being, be discussed in private.
¶ 30. From our de novo review of the record, we find a one-page exhibit to LaCroix's motion for summary judgment where the Board, on May 7, 2007, called an executive session and gave the reason merely as "to discuss personnel and pending litigation." According to our supreme court's instruction in Common Cause, this would appear to be an insufficient explanation for calling an executive session. The County has failed to respond to LaCroix's argument or citation of Common Cause. Accordingly, we reverse the grant of summary judgment on this first claim and remand for further proceedings in the chancery court.[14]
*662 ¶ 31. As to the second claim, we find no evidence in the record that the Board is violating the Open Meetings Act by not taking minutes in executive session as required by statute. The only evidence that LaCroix offers on this claim is Thomas's interrogatory discovery responses. There, Thomas stated that he keeps the minutes of the Board's meetings, and "if necessary," he keeps the minutes of the executive sessions. Additionally, the Board's attorney reviews the minutes for accuracy. Thomas also later reiterated that if "board action is taken during executive session, the minutes are taken." We do not find these responses indicate a violation of the Open Meetings Act, or that Thomas did not take minutes during executive session when legally mandated, as LaCroix argues. Section 25-41-11(1) requires the Board's minutes to reflect certain basic information (members present, date, time, and place of meeting) or record "any final actions taken" and record, by member, "any vote taken." Unless final actions or votes are taken during executive session, no minutes are required unless "the public body requests [it] be included." We agree with the chancellor that LaCroix has failed to supply any proof as to a violation on this second claim. Accordingly, we affirm in part and reverse and remand in part as to LaCroix's Open Meetings Act claim.

3. Mississippi Public Records Act Claim
¶ 32. LaCroix was successful with respect to two of his Public Records Act claims; on appeal, he only takes issue with the outcome of one: his August 2, 2007, request for his August 6, 2007, visit to the Planning Commission. The chancellor ruled that the Planning Commission's response to LaCroix's request was a violation of the Public Records Act, but it was not willful; therefore, a civil penalty was not assessed. LaCroix argues, however, that the Planning Commission purposefully "intended to delay or prevent inspection" of the public records he requested and should be fined accordingly.
¶ 33. The pertinent part of the Public Records Act regarding access to records states:
[A]ny person shall have the right to inspect, copy or mechanically reproduce or obtain a reproduction of any public record of a public body in accordance with reasonable written procedures adopted by the public body concerning the cost, time, place and method of access, and public notice of the procedures shall be given by the public body, or, in the event that a public body has not adopted such written procedures, the right to inspect, copy or mechanically reproduce or obtain a reproduction of a public record of the public body shall be provided within one (1) working day after a written request for a public record is made. No public body shall adopt procedures which will authorize the public body to produce or deny production of a public record later than fourteen (14) working days from the date of request for the production of such record.
Miss.Code Ann. § 25-61-5(1) (Rev.2006) (emphasis added). During the time pertinent to this case, the County had not yet adopted written procedures concerning the method of access to public records. Accordingly, the section 25-61-5 one-day right of access was applicable. As the penalty for violating the Act, "[a]ny person who shall willfully and knowingly deny to any person access to any public record which is not exempt from the provisions of this chapter shall be liable civilly in a sum not to exceed One Hundred Dollars ($100.00), plus all reasonable expenses incurred by such person bringing the lawsuit." *663 Miss.Code Ann. § 25-61-15 (emphasis added).
¶ 34. On August 2, 2007, LaCroix advised the Planning Committee that he "wish[ed] to inspect and copy records maintained by [that] office" on August 6. When LaCroix, armed with his tape recorder, visited the Planning Commission to obtain the records on August 6, 2007, he spoke with Wilson, a code enforcement officer. Wilson stated he did not think he could authorize LaCroix's request as it was "going way over [his] head"; Wilson was under the mistaken impression he had thirty days to comply with the request. Additionally, on August 6, but after his visit to the Planning Commission, LaCroix received a letter from the Board's attorney, Smith, dated August 3, 2007, in response to LaCroix's August 2, 2007, request. The letter explained that the Planning Commission could not comply with LaCroix's request to copy records on August 6 as there were impending elections on August 7, 2007. However, the Planning Commission told LaCroix it would accommodate his request after August 10, 2007, but before August 22, 2007. Smith was under the admittedly mistaken belief that the Planning Commission had fourteen working days from the date of LaCroix's request to comply, or until August 22, 2007, instead of one day as required by law.
¶ 35. In his January 10, 2008, opinion, the chancellor found that the Planning Commission's response to LaCroix's August 6 visit was a violation of the Public Records Act, but he remanded the issue for a hearing on the willfulness of the violation. At the hearing, the chancellor heard testimony from LaCroix; Moore, the Planning Commission manager; and Wilson regarding this issue. Moore testified that the office was short handed on August 6 as she had previously scheduled a vacation day since she was a candidate in the August 7 election. Further, the primary clerk normally in the office, Eloise Finley, had an emergency with her child on the morning of August 6 and did not arrive until after LaCroix's visit. Wilson, a code enforcement officer, testified he was just "filling in that day" in the office and was not familiar with what to do when someone did not request a specific record, but instead wanted to search the public records generally. LaCroix contends that he sent a list of eighteen items he wished to see; Moore, however, testified that she received only one page without any attachment identifying particular documents. The transcript of LaCroix's encounter with Wilson reveals that in response to Wilson's question as to what records LaCroix wanted to see, LaCroix at first responded, "It's just an abundance of records, miscellaneous. When I review them, I'll tell you what I need as I need them." Thereafter, he apparently showed Wilson the list of the eighteen categories of documents at which time Wilson stated that he could not authorize access to the records and recommended LaCroix speak with the Board's attorney. Wilson asked for a copy of the list and said he needed to "check into it a little bit to see."
¶ 36. In making his ruling that there was no "willful violation," the chancellor noted that while "[t]his Court takes strong belief in the Public Records Act, this case exemplified a tremendous amount of effort over a small thing ... [that] should have been long ago resolved. There's a lot of litigation here." The chancellor found the violations "minimal in nature"; there was no "great intent to deprive [LaCroix] of anything. It was just a great intent to find a more convenient date and time." LaCroix admitted that there were no requested public records he had not received by the date of the hearing.
*664 ¶ 37. LaCroix argues that the evidence shows the violation was willful and the chancellor's ruling was "plain error" as it creates an exception to the Act  the reasons he was denied the records were mere excuses which are not valid under the Act. We reject this argument. The element of "willfulness" only pertains to assessment of possible civil penalties, not the actual violation. No exception to a Public Records Act violation could occur, since there is no "willfulness" element regarding the violation itself. See Miss.Code Ann. § 25-61-5 and -15. The County, in its brief, admitted that it had no policy in place regarding public-record requests at this time; but it denied any willful intent. It maintained that Smith's letter was not a complete denial, but a delay. We affirm the chancellor's finding that the record does not support a willful denial of access to records by the Planning Commission so as to justify imposition of a civil penalty.

4. LaCroix's Motion for Sanctions
¶ 38. LaCroix claims that the chancellor erred in denying his motion for sanctions against the County. LaCroix's motion was in response to the County's motion for contempt,[15] which was ultimately withdrawn, for LaCroix's failure to remit payment for compilation and copying of his public-records request. At the February 1, 2008, hearing, the chancellor ordered the County to provide the records to LaCroix within two weeks. The chancellor had also ordered LaCroix be sent a bill for "the services and cost for copying" the records, and ordered LaCroix to pay the bill in compliance with the Public Records Act, "if it's a reasonable bill." The February 20, 2008, final judgment also ordered LaCroix to pay the County "within two weeks," $206 in satisfaction of the County's bill of $353, which represented the cost of the copies and 4.2 hours of research at $15 per hour, reduced from $50 per hour. LaCroix admitted he did not pay the County's bill, as he deemed it "unreasonable." He claimed "attorney fees" had been charged in the guise of "research." LaCroix filed his motion for sanctions against the County on March 6, 2008. A hearing was held on March 14, 2008, on the numerous post-judgment and related motions filed by the parties, where the County withdrew its motion for contempt. LaCroix explained that he interpreted the judgment as stating he had two weeks from February 20 to pay the bill; he complied; and the County's motion for contempt was premature. The County argued that the chancellor's ruling from the bench was clear  LaCroix had two weeks from the February 1 hearing to pay the bill. However, since LaCroix, by the March 2008 hearing, had paid the bill, the County withdrew its motion for contempt. LaCroix, however, did not withdraw his motion for sanctions.
¶ 39. In his motion, LaCroix contended that the County's motion for contempt was without evidentiary support and burdensome, because Smith's bill for "unauthorized attorney fees" was deceitful and fraudulent, therefore, in violation of Mississippi Rule of Civil Procedure 11 and the Litigation Accountability Act, Mississippi Code Annotated section 11-55-5 (Rev. 2002). Rule 11(b) states that "[i]f any party files a motion or pleading which, in the opinion of the court, is frivolous or is filed for the purpose of harassment or delay," the court may order the party, or his attorney, or both, to pay the opposing *665 party reasonable expenses including attorneys' fees. M.R.C.P. 11(b). Section 11-55-5(1) allows for reasonable attorneys' fees and costs if a party brings a motion "that is without substantial justification." The chancellor, finding that sanctions were not warranted, stated that both parties had "filed mountains of pleadings ... that overlap each other." He denied LaCroix's motion for sanctions and found any damages under the Litigation Accountability Act were unwarranted.
¶ 40. We find no error with the chancellor's ruling. While the chancellor had ordered LaCroix to pay the County's fees for producing the records, it was unclear whether LaCroix was to pay the bill within twenty days of the hearing or the final judgment. However, once LaCroix paid the fees and the County withdrew its motion, the issue became moot. From our review of the record, we cannot find that the chancellor erred in concluding that sanctions under neither Rule 11 nor the Litigation Accountability Act were warranted.

CONCLUSION
¶ 41. The chancellor did not err in granting partial summary judgment to the County in dismissing LaCroix's claims under Mississippi Code Annotated section 19-5-22 and 42 U.S.C. § 1983. Further, we find no error in the chancellor's finding of no willful violation of the Public Records Act regarding the acts of the Planning Commission. The chancellor did not abuse his discretion in denying LaCroix's motion for sanctions. Regarding the Open Meetings Act issue, we reverse the grant of summary judgment as to the first claim of explaining the reason for going into executive session and remand for further proceedings in the chancery court.
¶ 42. THE JUDGMENT OF THE CHANCERY COURT OF MARSHALL COUNTY IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED EQUALLY TO THE APPELLANT AND THE APPELLEES.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, ISHEE, ROBERTS AND MAXWELL, JJ., CONCUR. CARLTON, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.
NOTES
[1] LaCroix claims that the Board's issue was not actually about his unclean property at this address, but was to force his appearance before the Board to confront him about an un-permitted storage building he had placed on another lot.
[2] The record contains correspondence from LaCroix to the County in December 2005 and January 2006 attempting to insure that all bills for garbage collection at all of LaCroix's rental properties went to his home address and not to the tenants' addresses. LaCroix claims he again wrote the County Administrator in September 2006 that all bills for garbage collection at four of his rental property addresses be mailed to his home address to insure timely payment. However, the record also reflects that the account with the County's garbage collector, Resourceful Environmental Services, Inc. (R.E.S.), was actually set up by the tenant in his name. Details on how this account came to be established in the tenant's name are not properly in the record; the affidavit of a garbage collection agency employee explaining in detail how the account was set up was not designated as part of the record but was attached by LaCroix as part of his purported "record excerpts." Neither party attempted to supplement the record pursuant to Mississippi Rule of Appellate Procedure 10(e). Accordingly, we cannot consider it. Davis v. Christian Brotherhood Homes of Jackson, Miss., Inc., 957 So.2d 390, 398(¶ 15) (Miss.Ct.App.2007) (court cannot consider matter placed in "record excerpts" that is not, in fact, a part of the record on appeal).
[3] LaCroix stated he immediately reimbursed his tenant for the amount the tenant paid the County in delinquent garbage fees. LaCroix's lease agreements provide that the garbage collection fees are included in his tenants' rent, and he remits payment to the County.
[4] The Planning Commission denied LaCroix identified specific records in his request; it claims the office received only the one-page letter. LaCroix included the list in the record before this Court. The list includes items such as "all building permits since 2001," "money receipts" since January 2007, "property inspection reports since 2001," and "emails sent and received."
[5] Smith was apparently under the mistaken impression that the County had fourteen days to comply with LaCroix's request.
[6] At the time, Thomas wrote a letter to LaCroix stating he did not believe these were considered public records, but he was seeking an Attorney General's Office opinion to clarify this matter. It was later determined the handwritten notes which were used to compose the minutes of the Board's meeting were considered "public records."
[7] LaCroix specifically claims the Board enters into executive session to discuss public business and then illegally fails to enter it into the public record. LaCroix furnished this "supplemental discovery" in his record excerpts, but as it was not included in the record before the chancery court, we cannot consider it. Davis, 957 So.2d at 398(¶ 15).
[8] The chancellor realized at this hearing that he had not ruled on LaCroix's August 7, 2007, records request to the County Administrator's office and found the denial willful. The court, however, found the August 6, 2007, denial of access to public records by the Planning Commission was not willful.
[9] The County billed LaCroix for 4.2 hours at $50 per hour for copy charges and time for obtaining the copies from R.E.S. and producing them. The court later reduced this second charge to $15 per hour.
[10] LaCroix raises five issues on appeal, but for judicial economy we shall discuss his first and second issue together.
[11] The statute reads in pertinent part:

(1) Fees for garbage or rubbish collection or disposal shall be assessed jointly and severally against the generator of the garbage or rubbish and against the owner of the property furnished the service. Any person who pays, as a part of a rental or lease agreement, an amount for garbage or rubbish collection or disposal services shall not be held liable upon the failure of the property owner to pay those fees.
(2) Every generator assessed the fees authorized by Section 19-5-21 and the owner of the property occupied by that generator shall be jointly and severally liable for the fees. The fees shall be a lien upon the real property offered garbage or rubbish collection or disposal service. ... The county shall mail a notice of the lien, including the amount of unpaid fees and a description of the property subject to the lien, to the owner of the property.
. . . .
(4)(a) The board of supervisors may notify the tax collector of any unpaid fees assessed under Section 19-5-21 within ninety (90) days after the fees are due. Before notifying the tax collector, the board of supervisors shall provide notice of the delinquency to the person who owes the delinquent fees and shall afford an opportunity for a hearing, that complies with the due process protections the board deems necessary, consistent with the Constitutions of the United States and the State of Mississippi....
(b) Upon receipt of a delinquency notice, the tax collector shall not issue or renew a motor vehicle road and bridge privilege license for any motor vehicle owned by a person who is delinquent in the payment of fees unless those fees in addition to any other taxes or fees assessed against the motor vehicle are paid. Payment of all delinquent garbage fees shall be deemed a condition of receiving a motor vehicle road and privilege license tag.
Miss.Code Ann. § 19-5-22(1), (2), and (4)(a)-(b) (Rev.2003) (emphasis added).
[12] We reject the chancellor's conclusion that LaCroix failed to articulate a constitutional right. Section 19-5-22 itself requires protections that comply with due process. From our review of LaCroix's pro se pleadings and briefs, it is apparent he claims a violation of the Due Process Clause of the United States Constitution. We further reject the chancellor's position that LaCroix's claim is procedurally improper as it is not an appeal from the Board's action pursuant to Mississippi Code Annotated section 11-51-75 (Rev.2002), which allows a person aggrieved from "a judgment or decision of the board of supervisors" to appeal within ten days from the decision through filing a "bill of exceptions," which will be transferred to the circuit court. LaCroix's claim is that the Board failed to take any action as required by statute; accordingly, there was no action from which he could "appeal" under section 11-51-75.
[13] In LaCroix's letter to one of the supervisors on July 27, 2007, LaCroix referred to "a lien against a former tenant of one of my properties." This letter indicates that LaCroix no longer had a landlord/tenant relationship with this particular individual at the time.
[14] Section 25-41-15 states that chancery courts have authority to enforce provisions of the Open Meetings Act "upon application of any citizen of the state, and shall have the authority to issue injunctions or writs of mandamus to accomplish that purpose. If the court finds that a public body has willfully and knowingly violated the provisions of this chapter, the court may impose a civil penalty upon the public body in a sum not to exceed" $100 plus all reasonable expenses incurred to bring suit to enforce the Act.
[15] A copy of the County's motion for contempt is included in LaCroix's purported "record excepts," but it is not in the record. We note the motion is dated February 22, 2008, but there is no entry in the official chancery court docket reflecting the filing of the motion.